### SCRUGGS BROS. & BILL GARAGE et al. v. STATE INDUSTRIAL COM. et al.

No. 14258—Opinion Filed Sept. 25, 1923.

Rehearing Denied Dec. 18, 1923.

**1. Master and Servant—Workmen's Compensation Law.**

The Workmen's Compensation Law was adopted primarily for the benefit of employes, but upon a basis thought to be fair alike to both the employe and the employer.

**2. Same — State Industrial Commission—Powers and Duties—Procedure.**

The State Industrial Commission sits rather as a board of arbitration than a court, with the duty of passing upon controversies arising between the employe on the one side, and the employer and insurance carrier on the other side, and the same strict rules of procedure do not apply as do apply in courts of record presided over by a judge learned in the law.

**3. Same — Decision on Facts—Conclusiveness.**

Where a controversy arises between an employe on one side and the employer and

his insurance carrier on the other, the commission sits as the triers of the facts; and the findings of the commission upon a question of fact becomes final and binding upon all parties, including the appellate court, in case of an appeal.

### 4. Same—Liberal Construction of Workmen's Compensation Law.

The Workmen's Compensation Law shall be liberally rather than strictly construed, both by the Industrial Commission and the Supreme Court on appeal, so as to give effect to its intent and purpose, and so as to do justice between the parties.

### 5. Same—Liability for Medical Attention.

Under the Workmen's Compensation Law the employer has the right to name the physician to render medical treatment to an injured employe; and direct where such employe shall go for treatment, and where the employe, without reference to the wishes of the employer, takes the matter in his own hands and secures treatment and contracts bills, the Industrial Commission has no authority, over the objection of the employer and insurance carrier, to allow such bills against them; but this is a right which the employer can waive, and where his conduct is such as to reasonably indicate to the employe that he may select the physician or the place of securing treatment, and the employe contracts for treatment, the employer and the insurance carrier are liable for the outlay so long as the bills are reasonable and necessary.

### 6. Same—Traveling Expenses.

Where such treatment is to be gotten at at a distance from the place of injury, the expense thereof properly includes actual outlay for railroad fare.

### 7. Same—Proof of Reasonableness of Bills —Waiver.

Where the employer waives the right to direct the agency to render treatment to an injured employe, and the employer has knowledge that the employe is going out of the community for treatment, and makes no objection thereto, such employer likewise waives proof that the bills for such treatment are reasonable for the same class of treatment in the location where the injury occurred.

### 8. Same.

Where the employer furnishes a physician for first aid treatment, and in the presence of the employer such physician advises the injured employe to go elsewhere for treatment, and the employer consents thereto and advises that it is the thing to do, and reports to the Industrial Commission that the injured employe has been sent to a hospital for treatment, the commission is authorized to excuse the employe from making formal request upon the employer for treatment, and likewise excuses the employe from making proof that the bills paid and to be

paid are reasonable and such as would have been charged a patient in the same station in life as the employe, and in the community where the injury occurred.

### 9. Same.

Where bills presented for treatment are shown to have been paid in advance by the employe, along with others unpaid, contracted by him, the bills are themselves some proof of their reasonableness or unreasonableness, and where the conduct of the employer has been such as to justify the allowing of bills of that kind, they should be allowed unless they are in amount such as would shock the sense of justice of the commission or of the court on appeal.

### 10. Same—Allowance of Bills and Lien Therefor.

Where bills are presented by the injured employe, some of which have been paid and others of which have not been paid, and the bills are of a character properly allowable by the commission, the award made by the commission should be in favor of the injured employe for the whole amount, and the unpaid creditors declared to have a lien upon the sum awarded to the extent of the unpaid portion of the bills.

### 11. Same—Jurisdiction of Commission—Effect of Appeal.

The State Industrial Commission has general jurisdiction of controversies growing out of injuries to employes, as between the injured employe and the employer and his insurance carrier; but when once a finding or award has been made by the commission, and an appeal has been taken therefrom, the commission, by reason of such appeal, is ousted of its jurisdiction as to the particular matter involved in the appeal, and any order made by the commission with reference to the matters appealed is a nullity.

### 12. Same—Appeal—Disposition of Cause —Appeal and Error—Jurisdiction of Appellate Court.

Where an original petition is filed in the Supreme Court by way of appeal from a finding or award made by the Industrial Commission, the appellate court has authority and jurisdiction, under the Workmen's Compensation Law, in furtherance of justice, to affirm the finding or award, or to reverse with directions, or to modify the finding and award and to make such orders with reference to the matter involved as should have been made by the commission.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Action by Scruggs Bros. & Bill Garage et al. to reverse award for medical services made by State Industrial Commission. This cause was commenced in this court by original petition being filed herein on the 21st day of April, 1923. Award modified and affirmed.

Burford, Miley, Hoffman & Burford, for petitioners.

George Short, Atty. Gen., Baxter Taylor, Asst. Atty. Gen., and H. G. Oliver, for respondents.

Opinion by SHACKELFORD, C. It appears from the record in this case that the claimant, Leslie E. Sweeney, was accidentally injured on the 14th day of May, 1922, by getting a piece of steel in his eye while rendering service for the Scruggs Brothers & Bill Garage in the town of Hollis, Okla. It seems that while hammering on a piece of steel, in the course of his employment, a small piece thereof was broken off and struck claimant, piercing one of his eyes, from which accident he lost the eye.

The claimant, it seems, first consulted Dr. Roy Pendergraft, who told him to go to Dr. Abernathy at Altus. It appears, however, that neither Dr. Pendergraft nor Dr. Abernathy were able to remove the steel particle. The claimant, after consulting Drs. Pendergraft and Abernathy, went to Wichita Falls, and there Dr. Hartsook removed the steel particle from the eye. After this was done it appears that the claimant returned to Altus and Dr. Abernathy treated him for two or three days, and then he went to Hollis and again saw Dr. Pendergraft. It seems, further, that claimant, being dissatisfied with the treatment he was getting, and on or about the 19th or 20th day of May, 1922, went to Dallas, Tex., and there consulted with Drs. Arnold, Taber & Harrington, and they advised him to go to St. Paul's Sanitarium. Following their advice he went to the sanitarium on May 20, 1922, and was there for about three weeks, and afterwards went back and was there for three days, when they removed his eyeball. This operation was performed about the 1st of July, 1922. It seems that during all of the time from May 20, 1922, until September 25, 1922, he was under treatment by Drs. Arnold, Taber & Harrington, the doctors who operated in the removal of the eyeball.

The evidence tends to show that the claimant contracted a bill of $50 at Wichita Falls for the removal of the steel particle from his eye, which bill the claimant himself paid.

At the St. Paul Sanitarium claimant's hospital expenses, as appears from the testimony, were as follows: Hospital bill, $148.75; nurse hire, $74; drugs, $3; railroad fare in going to Dallas and to the sanitarium, $7.70. These items were paid by the claimant. The doctor bill of Drs. Arnold, Taber & Harrington amounted to $250, which has not been paid, but for which claimant has become liable, and all growing out of the injury.

In December, 1922, a showing was made before the Industrial Commission that the claimant had paid out for medical expenses, including doctor bills, nurse hire, drugs, and railroad fare, the sum of $283.45 and that he had contracted a doctor bill with Drs. Arnold, Taber & Harrington while at the St. Paul Sanitarium in the sum of $250 which had not been paid.

Upon a hearing before the Industrial Commission an award was made in favor of the claimant for the amount of the bills paid and unpaid, amounting to $532.85, against the employers and against the insurance carrier. The order of the commission was made on the 24th day of March, 1923. On the 21st day of April, 1923, the employer and insurance carrier began this proceeding in the Supreme Court, attacking the jurisdiction of the commission to make the award. On the 23rd day of April, 1923, and after the petition of the employer and insurance carrier had been filed in this court, the Industrial Commission made a supplemental order awarding the claimant the sum of $282.85, the actual amount they found he had expended, and awarding the sum of $250 to Drs. Arnold, Taber & Harrington. The supplemental order is brought before this court in a supplemental petition attacking the validity thereof for the same reasons set up in the original petition; and for the further reason that the Industrial Commission had lost jurisdiction of this particular claim by reason of the proceedings first begun on the 21st day of April, 1923, in the Supreme Court.

The petition of the employer and insurance carrier attacks the award for the following reasons:

(1) That there was no request made upon the employer for medical treatment.

(2) That there was no showing made by the claimant that the bills for service were reasonable.

(3) That the award to claimant in the sum of $532.85 was not supported by the claim nor by the evidence.

(4) That there is no legal authority for allowing railroad fare.

(5) The remaining reasons assigned attack the validity of the supplemental order making the award to Drs. Arnold, Taber & Harrington.

These matters we will undertake to try and determine in the light of the statutes known as the Workmen's Compensation

Law, and the record made upon the claim before the Industrial Commission.

The Workmen's Compensation Law was adopted by the Legislature of the state of Oklahoma primarily for the benefit of employes. It had long been a well-recognized fact that many industrial pursuits were in operation where men were being hurt in the course of their employment. by reason of dangerous agencies and conditions over which the employe had little or no control, and lost time and endured physical suffering many times, in fact, the majority of times, when there was no means known to the law by which they could be recompensed. Comparatively few of the injuries arising would be actionable. Unless it could be shown that there was actual negligence upon the part of the employer, no recovery could be had, and the delays and expense arising under the law and in the courts in many cases rendered it futile to sue. The Legislature undertook to remedy such condition on a basis that would be fair to both the employer and the employe. In adopting this law, the right to sue in a law court was abrogated, except upon death claims and in cases where the employer failed to provide protection to his employes by carrying insurance. To compensate that, the employer and his insurance carrier were made liable to the injured employes without regard to the cause of the injury, with only two or three exceptions not necessary to be noticed here. A scheme was worked out as nearly as practicable dividing the loss of time and earning capacity between the employer and the employe. It appears that physical suffering was not taken into consideration and seems to have no part in the consideration in fixing the compensaton. That falls peculiarly to the lot of the injured employe. A board of arbitration was created to sit as triers of the facts as between the employer and the employe, and to adjust the loss of time and earning capacity between the two. If the matter of human suffering is in any way taken into the question. it is upon the basis of the employe enduring the pain and the employer and his insurance carrier paying the expenses of the treatment.

It has been repeatedly held by this court that no finding of fact made by the commission upon competent testimony is to be disturbed by the appellate tribunal. It is in the very terms of the act itself that the board of commissioners are the sole triers of the facts, and there is no power in the appellate court to disturb the findings of fact made by the commission upon competent testimony. There is another thing

in connection with the operation of the Industrial Commission that must be borne in mind, and that is, that the board of commissioners constitute a board of arbitration rather than a court. Their office is appointive and not elective, and no legal learning is required to hold the position. The Chief Executive appoints the commissioners, and any layman is qualified to sit upon the commission if he holds the Governor's commission giving him authority. The Legislature intended the commission as a board of arbitration between the employer and his insurance carrier on the one side, and the injured employe on the other. This must be so since it required no legal learning on the part of the members of the board, and the means of testing the validity of their awards is by original petition in the Supreme Court and not by appeal upon the record made before the commission as provided for appeals from trial courts. Hence, of necessity, the proceedings before the Industrial Commission must be informal in many respects as compared to the procedure in a court presided over by a judge required to be learned in the law. And, in addition to the foregoing facts, this court is committed to a liberal construction of the Workmen's Compensation Law for the purpose of carrying out and giving effect to its provisions.

With the idea in mind that the commission is not held to strict legal formality, and that the findings and awards are not to be disturbed if there is any testimony reasonably tending to support them, and that the law is to be construed liberally, we shall now examine what the commission had before it upon which to make its finding and award in behalf of this injured employe.

The claims for medical treatment and expenses were filed before the commission in December, 1922, showing upon the part of the employe that he had made an outlay of $283.85 in cash actually paid, and also a claim by him on behalf of Drs. Arnold, Taber & Harrington for the sum of $250.00 for treatment of the employe from May 20, 1922, to September 25, 1922, including an operation in removing the injured eyeball, and which sum had not yet been paid although the parties had been furnished with a bill.

The employer and insurance carrier appeared by their attorneys and denied all liability for the reasons here assigned by them why the award should be vacated.

The proof on the part of the claimant, Leslie E. Sweeney, tended to show about as follows: That claimant was injured on the 14th day of May, 1922, by being struck

in an eye by a flying piece of steel. That Dr. Roy Pendergraft of Hollis was called upon for first aid treatment, and he being unable to remove the offending steel, claimant was taken to Dr. Abernathy of Altus, Okla., and it appears that Dr. Abernathy was unable to remove the steel.

This appears from the examination:

"Q. When you went to Altus did either of them go with you? A. Mr. Scruggs drove me over—Q. To Dr. Abernathy? A. Yes, sir. Q. And he couldn't get this steel out? A. No. Q. And he suggested Dr. Hartsook of Wichita Falls and Scruggs Brothers told you to go down there? A. Yes, sir."

The claimant went to Dr. Hartsook and had the steel removed, for which operation he paid the sum of $50 and then returned to Hollis. On his return to Hollis he talked with Dr. Roy Pendergraft in the presence of Mr. Scruggs. Claimant says:

"Went to Hollis to talk to Dr. Roy Pendergraft and he advised me and Mr. Scruggs both that the best thing I could do was to go to Dallas to some good physicians and he referred me to Drs. Arnold, Taber & Harrington."

Then one of the commissioners asked him:

"Q. I understand Scruggs told you to go? A. No, Dr. Roy Pendergraft in the presence of Mr. Scruggs. Q. Didn't Scruggs tell you to go? A. Yes, sir, he advised me to go. He said go ahead."

Following this conversation with Dr. Pendergraft and Mr. Scruggs he says he went to Dallas and there consulted with Drs. Arnold, Taber & Harrington. They examined his eye and told him to go to St. Paul's Sanitarium. He went there on the 20th day of May and was there a little more than three weeks under treatment by Drs. Arnold, Taber & Harrington trying to save his injured eyeball. Afterwards he went back to the sanitarium and stayed three days when they finally removed the eyeball, which operation was about the 1st day of July, 1922. It was at this sanitarium where the claimant was required to pay the hospital, nurse, and drug bill amounting to $225.75. This part of the expense he was required to pay and did pay in advance. He testifies that he was out $7.70 railroad fare going to Dallas, making an actual outlay of $233.45. Drs. Arnold, Taber & Harrington began treating this claimant on the 20th day of May, 1922, and continued treatment until September 25, 1922, seeing him every day and sometimes twice per day. The first several weeks treatment was devoted to trying to save the injured eyeball, and finally, as we infer, finding that impossible,

the doctors operated by removing the ball. It was for this service the doctors charged the sum of $250, which the claimant had not paid. These bills were presented to the insurance carrier and they refused payment.

It appears further from the testimony that the claimant was not advised until some time after he received the injury as to who the insurance carrier is. It seems that the employers had neglected to post up notice in their place of business that they were carrying insurance. Some time before the claimant went to Dallas for treatment one of the Mr. Scruggs told the claimant that he would try to get the insurance carrier behind the matter and take care of him. In the cross-examination of the claimant in reference to going to a doctor for treatment he testified that Mr. Scruggs said to him: "Sweeney, I think it is the best thing in the world you can do. Be sure to get the name of the doctors." Some of this evidence was contradicted by the employers, and witnesses called by them, but we have nothing to do with that. We are forbidden to weigh the evidence. We will look into the evidence to determine as a matter of law as to whether there is any evidence to support the findings of the commission.

In addition to the testimony taken before the commission on the hearing had upon these bills, there was another very significant piece of information before the commission. Upon a form furnished by the Industrial Commission designated "Employer's First Notice of Injury," dated May 26, 1922, signed by Scruggs Brothers, employers, by J. G. Scruggs, is the following:

"Impossible to state at this time the extent of the injury. It is thought that the sight is totally destroyed and are now making an effort to save the ball. Was injured employe placed in a hospital? Yes. Name of Hospital? St. Paul Sanitarium."

The claimant, Sweeney, was presenting his own claim for actual cash outlay and was presenting the bill of Drs. Arnold, Taber & Harrington which had not been paid. The commission allowed the bills against the employer and the insurance carrier.

It is contended that this should not have been done since there was no request made upon the employer for medical treatment. They cite as an authority upon that point Okmulgee Democrat Company v. State Industrial Commission, 86 Okla. 62, 206 Pac. 249. There is no question but that the construction placed upon the Workmen's Compensation Law in Okmulgee Democrat Company v. State Industrial Commission, supra, requiring a request to be made by the in-

jured employe for medical attention is correct. We have no fault to find with the construction there placed on the statute, and in that case the rule had application. There the injured employe never in any manner called upon the employer about his necessity for medical treatment. In the case under consideration the injured employe talked with Mr. Scruggs, the employer, and his doctor, and the doctor thought the employe should go to Dallas for treatment, and Scruggs told him it was the thing to do. Scruggs told the commission in his report that the employe had been sent to the St. Paul Sanitarium for treatment. There was no need for a request when the employer told the employe to go and get the treatment and advised the Industrial Commission that the employe had been sent to the sanitarium for treatment. Mr. Scruggs denies telling the employe to go to Dallas, but the report made to the commission cannot be very well denied as it appears over his own signature. The rule contended for as to the request for medical treatment has no application here.

We think that under the Workmen's Compensation Law and construction placed thereon by the courts, the employer has a right to employ the agency through which treatment is secured, but when the employer delegated that right to the injured employe, as seems to have been done in this case, and as the commission had a right to conclude had been done under the proof here, it carries with it the right to do all legitimate and necessary things, such as to pay railroad fare, drug bills, hospital fees, and nurse hire, just as was paid by this claimant. They were incidental and necessary, and Mr. Scruggs knew that such expense would be incurred

We think under the evidence in this case the claimant had a right to infer that Mr. Scruggs and the insurance carrier would pay the expenses. Mr. Scruggs told him he would try to get the insurance carrier behind the matter and take care of him, and he told the Industrial Commission the employe had been sent to St. Paul's Sanitarium for treatment and that was where the most of this account was contracted. We think no request for medical treatment was necessary, nor was it necessary for the claimant to ask Mr. Scruggs if he and the insurance carrier were going to pay the bills. Under the facts in this case it became the duty of Mr. Scruggs to tell the employe that he and the insurance carrier were not going to pay the bills, if they did not intend to pay them. If Mr. Scruggs had told the injured employe when he talked about going to Dallas that he would not pay the bill, and had told the Industrial Commission in his report that he and the insurance carrier would not be responsible for the expense, no doubt there would be an entirely different record here.

It was insisted in the oral argument in this case that the claimant "basked in the everlasting sunlight of supreme indifference" with regard to the matter of the expense. We think if there was any such seeming indifference, that it was justified by the conduct of Mr. Scruggs. Both the claimant and the Industrial Commission had a right to think that the employers and the insurance carrier would act in good faith with reference to the matter and with the injured employe.

Again, it is insisted by the petitioners that the commission made no finding that the bills presented were reasonable and that there was no testimony that the bills were such as would have been charged in the community where the injury occurred and against a person in like station of life as claimant. When Mr. Scruggs consented or agreed, and directed or advised the claimant to go out of the community for treatment and when he told the commission in his report that the injured employe had been sent to the St. Paul Sanitarium for treatment he thereby eliminated any necessity for such proof upon the part of the claimant or such finding upon the part of the Industrial Commission.

Under the circumstances presented here we think the bills themselves are some proof as to their reasonableness or unreasonableness, and taking the entire matter into consideration as herein presented, we think the bills presented are not such as to shock the court's sense of justice. The bills at the hospital were required to be paid in advance and no doubt were their usual and customary fees. The bill of $50 for the operation in removing the steel from the eye does not seem to be an unreasonable bill for the service rendered. The bill of Drs. Arnold, Taber & Harrington for treatment from May 20th to September 25th, including the operation in removing the eyeball, and where treatment was given every day and often twice a day, cannot be said to be unreasonable.

Again, it is insisted by the petitioners that the bill of Drs. Arnold, Taber & Harrington could not be allowed because the claimant had not asked for it in his claim, but it was in a separate claim. We think there is nothing in this contention worthy of serious consideration. The claims were both

filed in this case before the Industrial Commission and they were separated only because one had been paid and the other had not. One had been paid and the claimant was responsible for the other if it should turn out that the employer and the insurance carrier were not. Both were the proper subjects for consideration by the Industrial Commission; the amount to be paid to the injured employe because he had made the actual outlay and the other was payable to him for the use and benefit of the doctors who had treated him and had not yet been paid. It was not improper nor beyond the authority and jurisdiction of the Industrial Commission to award both claims to the injured employe; but the commission should have gone farther in the award and declared a lien upon the award to the extent of $250 in favor of Drs. Arnold, Taber & Harrington. Then the whole matter would have been covered.

Lastly, it is contended that the commission went beyond its jurisdiction when in the first instance the award of the full amount had been made in favor of the employe and it had been appealed from by an original petition being filed in the Supreme Court attacking the award as originally made, the commission after such appeal had been taken made supplemental order changing their original order to the extent of making the award of the unpaid amount of $250 direct to the doctors to whom the amount was owing. We think the commission was in error in making this supplemental order for two reasons, the first being that claims arising under the Workmen's Compensation Law are matters strictly arising between the injured employe on the one side and the employer and his insurance carrier on the other. Differences between the employer and his insurance carrier and third persons are not cognizable before the Industrial Commission. If the doctor bill had been contracted for between the employer and his insurance carrier, and the doctors who rendered the service, then the claim should be presented in some court having jurisdiction to try out the matter therein involved. The second reason is that although the Industrial Commission has and retains general jurisdiction over cases arising under the Workmen's Compensation Law, yet, when once the commission has made a finding, or an award, and a petition has been filed in the Supreme Court to review such finding or award, the commission is thereby ousted of its jurisdiction over the particular matter involved in the appeal. The award from which the appeal is prosecuted must stand or fall upon the trial in

the appellate court and is not subject to change pending the appeal. But the erroneous supplemental order changing the award pending the hearing on appeal will not necessarily work a reversal of the entire award. It is not necessary to reverse because of such erroneous supplemental order. It is provided in section 7297, Comp. Stat. 1921, the section of the Workmen's Compensation Law providing for appeals from the orders made by the commission, that "such action shall be subject to the law and practice applicable to other civil actions cognizable in said court", and it has been repeatedly held by this court that not all errors will work reversals of judgments of the courts below. The supplemental order being erroneous but not of such a nature as will work a reversal of the entire award, the same will be vacated and set aside by this court.

Under the provisions of the Workmen's Compensation Law above quoted, this court has the power to reverse and dismiss, or reverse with directions, or to affirm, or to modify and affirm awards made by the Industrial Commission on appeal in proper causes.

In this case the award made by the Industrial Commission should be modified to the extent of creating a lien upon the award in favor of Drs. Arnold, Taber & Harrington for the sum of $250.

There was a mistake in the addition of the items. The amount of the items awarded should be $533.45.

We recommend that the award made by the Industrial Commission be corrected to read for $533.45. and that Drs. Arnold, Taber & Harrington be given a lien upon the said sum to the extent of $250. and, with this modification, that the award be affirmed.

By the Court: It is so ordered.