## MARLAND OIL CO. et al. v. SANS et al.

No. 26057. Oct. 29, 1935.

Rehearing Denied Dec. 3, 1935.

Randolph, Haver, Shirk & Bridges, for petitioners.

Mac Q. Williamson and Charles D. Reed, for respondents.

CORN, J. This is an original action filed in this court to review an order and award of the State Industrial Commission, made in favor of the claimant and against the respondent and insurance carrier, for an injury sustained by claimant, arising out of and in the course of his employment with the respondent, the Marland Oil Company, which resulted in permanent partial disability.

We will designate the parties as claimant and respondents, as they appeared in the trial below.

Claimant was injured on the 26th day of July, 1926, in the manner in which he describes as follows:

"Q. State to the court how you received that injury? A. I was hanging three-inch pipe lines upon stanchel and the stanchel had about a two-foot nipple and then a collar and it was set down in concrete about two foot from the collar and the line fell down and struck me in the back and mashed me right down into a scoop hole, with all of this line on me. Q. What was the injury received? A. A dislocated hip, ligaments torn loose and broken ribs and a skin on this shin."

Claimant was hospitalized and given medical treatment by the respondent and paid

temporary total compensation in the sum of $121.26. The claimant returned to work for the respondent after the healing period was over and worked for six or seven months at the same wage he was receiving prior to the injury, then he worked for the Co-operative Plumbing Company a short time and worked from May 4, 1930. to February 7, 1931, for the Empire Oil & Refining Company at about ten cents per hour less than his wages were at the time of the accident, then in between these periods of regular employment claimant did some work what he termed "piddling around", drawing from $1.50 to $2 per day and a considerable part of the time just board and room. In November of 1932, c'aimant filed his motion before the State Industrial Commission asking that his case be reopened and he be awarded further compensation for permanent partial disability, and after hearing at Ponca City and Oklahoma City, pursuant to due notice given to the parties, the State Industrial Commission issued its order and award, stating the claimant's earning capacity had been reduced from $4.40 to $2.20 a day for a period of 210 weeks from and after the 25th day of September, 1926, the date on which the temporary total disability ceased. From this order and award the respondent appea'ed to this court for a review, contending that there was no competent evidence on which to base the award, said case being 162 Okla. 41, 35 P. (2d) 895.

This court sustained respondent's appeal and ordered the award of the Industrial Commission vacated on the grounds that there was no competent evidence to sustain said award, and in the mandate instructed the commission to "show the reversal of record and to issue such process and to take such other and further action as may be in accord with the right and justice of said opinion." Marland Oil Co. v. Sans, 169 Okla. 41, 35 P. (2d) 895. The commission issued an order on said mandate, vacating its order of October 10, 1933, and resetting claimant's case for hearing on the next Ponca City docket. This order on the mandate was issued and filed with the commission on October 2, 1934. On October 5, 1934, the claimant filed a motion for rehearing. After due notice was given to the parties, there was a hearing had at Ponca City on October 17, 1934, at which time three additional lay witnesses and the claimant testified, and a motion was made and allowed by the court that all the prior evidence in this case be incorporated into and made a part of the last hearing. The respondents introduced no evidence, but satisfied themselves by objecting to any

further hearing on the grounds that the second trial was merely res adjudicata. After this hearing the case was submitted for judgment, and the commission, on the first day of November, 1934, issued an order and award, and then on the 26th day of November. 1934, the commission issued its amended order and award, in words and figures as follows:

"Before the State Industrial Commission of the State of Oklahoma

"Filed Nov. 26, 1926

"State Industrial Com.

"Paul Sans, Claimant, v. Marland Oil Company, Respondent, Travelers Insurance Co., Ins Carrier. No. 88760.

"Order

"Now on this the 26th day of November, 1934, the State Industrial Commission being regularly in session, this cause comes on to be considered pursuant to a hearing held at Ponca City, Ok'a., on, October 17, 1934, before Inspector Wm. Noble, duly assigned to hear said cause, on motion of the claimant to reopen said cause and award further compensation, at which hearing the claimant appeared in person and by his attorney, Charles D. Reed, and the respondent and insurance carrier appeared by its adjuster, B. H. DeSelms, and the commission after reviewing the testimony taken at said hearing and all the records on file, and being otherwise well and sufficient'y advised in the premises, makes the following findings of fact:

"1. That on the 26th day of July, 1926, c'aimant was in the employment of the respondent and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date he sustained an accidental personal injury, arising out of and in the course of his employment, consisting of injuries to his back, hips and right leg.

"2. That the average daily wage of the claimant at the time of said accidental injury was $4.40 per day, making his rate of compensation $16.92 per week.

"3. That by reason of said accidental injury the claimant was rendered medical treatment and paid compensation for a period of 7 weeks and one day or in the total sum of $121.26, as shown by the Form 7 filed September 1, 1926, for the temporary total disability, or time lost, and c'aimant returned to work on September 20, 1926, for respondent; that thereafter and on the 5th day of October, 1934, claimant filed his motion to reopen said cause on change of conditions and on the grounds of newly discovered evidence and for any permanent disability claimant may have.

"4. That on the 25th day of September,

1926, the commission made its order approving the settlement made on Form 7 for claimant's temporary total disability in the amount of $121.26; that claimant thereafter returned to work for the respondent and the Empire Refining Company, and worked approximately 90 weeks, altogether during which time he drew approximately the same wages as before the injury; but that by reason of said accidental injury, and since September 25, 1926, with the exception of the 90 weeks which claimant has had a change of condition in that his disability became worse so that he has a permanent partial disability as a result of said accidental injury, and by reason of which claimant has suffered a decrease in wage earning capacity of approximately 50 per cent., or a reduction in wage earning capacity from $4.40 per day to $2.20 per day, making his new rate of compensation $8.46 per week for a period of 300 weeks from and after September 25, 1926, less the 90 weeks that he was able to draw approximately the same wages.

"5. That by reason of claimant's permanent partial disability and decrease in wage earning capacity, aforesaid, the claimant is entitled to sixty-six and two-thirds per cent. of the difference between his average weekly wage and his wage earning capacity thereafter in the same employment, or otherwise payable during the continuance of said partial disability, not to exceed three hundred weeks, less the 90 weeks which claimant drew about the same wages, but subject to reconsideration of the degree of such impairment by the commission on its own motion or upon the application of any party in interest.

"Upon consideration of the foregoing facts, the commission is of the opinion that the claimant is entitled to the sum of $1,776.60, being 210 weeks' compensation at the rate of $8.46 per week, or the 300 weeks less the 90 weeks allowed for the time claimant was able to draw approximately the same wages, by reason of claimant's partial disability and reduction in wage earning capacity as a direct result of said accidental injury.

"It is therefore ordered: that within 15 days from this date the respondent or insurance carrier pay to the claimant the sum of $1,776.60, being compensation as set out above, for 210 weeks' compensation at the rate of $8.46 per week, on account of claimant's permanent partial disability and reduction in wage earning capacity for a period of not to exceed 300 weeks from and after September 25, 1926, less the 90 weeks during which time claimant was able to earn approximately the same wages; the same being now due and payable.

"It is further ordered: That within 15 days from this date the respondent or insurance carrier pay to claimant's attorney, Charles D. Reed, of Ponca City, Okla., the sum of $250 as a fair and reasonable sum for legal services rendered claimant in this cause, said sum to be paid out of the above award to claimant.

"It is further ordered: That within 30 days from this date the respondent or insurance carrier file with the commission proper receipt or other report evidencing compliance with the terms of this order.

"Upon the adoption of the following order the roll was called and the following voted aye: Doyle, Chairman; McElroy, C."

From this order the respondents appealed to this court for a review on two grounds:

"1. The State Industrial Commission erred in entering its order of November 26, 1934, for the reason that said order is an attempt on the part of the commission to adjudicate matters and issues previously adjudicated by the Supreme Court's decision in Marland Oil Company v. Sans, 169 Okla. 41, 35 P. (2d) 895, and is contrary to and in derogation of the court's mandate sent down in said cause.

"2. There is no evidence reasonably tending to support the State Industrial Commission's order of November 26, 1934."

Respondents contend in their first assignment of error that the second order issued by the commission is an attempt on its part to adjudicate matters and issues previously adjudicated in the first appeal, and is contrary to the court's mandate in the first appeal. In support of this contention counsel cite at length decisions where the appeal was from courts of law on grounds for a new trial, but failed to cite a single decision from an appeal from the Industrial Commission. This question of rehearing, after an award of the commission has been vacated by the Supreme Court on the grounds of insufficient evidence, has been definitely passed on by this court in the case of Associated Employers' Reciprocal and Missouri Valley Bridge Co. v. State Industrial Commission et al., 88 Okla. 80, 211 P. 491:

"Under section 14, article 4, chapter 246, Session Laws of 1915, the power and jurisdiction of the Industrial Commission over each case is continuing, and it may from time to time make such modification or change with respect to former findings or orders relating thereto as in its opinion may be just. And in a case where an appeal is taken from an award of the commission to this court and this court reverses the commission and vacates the award, because there was no evidence to support the same, and remands the cause for further proceedings not inconsistent with the opinion in the Supreme Court, the commission is not divested of jurisdiction to again hear and determine

the cause; and the doctrine of former adjudication does not apply."

It would be manifest injustice to the claimant to apply the rules and procedure used in trials in courts of law to cases before the State Industrial Commission. The Compensation Law has taken away the right of an injured employee who comes within the provision of the act to go into court and have a jury trial, and in its place substituted a summary, informal method of procedure, unknown to civil law. The Compensation Act gives a claimant benefits in addition to the civil law, one of which is the continuing jurisdiction of the commission. The civil procedure, as argued by the respondents under proposition 1, is no more applicable in a case before the State Industrial Commission than the "fellow servant rule" or "assumption of the risk" or the "question of negligence."

The Associated Employers' Reciprocal Case above cited is followed in the case of Oklahoma Natural Gas Corp. et al. v. Ford et al., 150 Okla. 83, 300 P. 753, where this court said:

"Also in the case of the Associated Employers' Reciprocal et al. v. State Industrial Commission, 88 Okla. 80, 211 P. 491, wherein this court held that the Industrial Commission had continuing jurisdiction to modify or change its award, and in that case it had been reversed by the Supreme Court on the grounds of failure of testimony to support the award. The same went back to the commission and was reopened and an award made and affirmed by this court on review."

In another case decided by this court which involved the question of res adjudicata in favor of the plaintiff is the case of Royal Mining Company et al. v. Murray et al., 167 Okla. 460, 30 P. (2d) 185, which says in substance that the commission is without authority to dismiss a claim properly before it without passing upon its merits. Now, when this case came back from the Supreme Court with instruction to show the reversal of record and to issue such process and to take such other and further action as may be in accord with right and justice and said opinion, it was mandatory on the commission under the last-named decision to decide this claimant's case on its merits, and under the evidence in the last-named hearing the commission could do none other than grant the order and award, which it did.

The respondents in their second specification of error contend that: "There is no evidence reasonably tending to support the State Industrial Commission's order of November 26, 1934," because claimant's loss of wages was not proven by the opinion of medical men. All the evidence of prior hearings was properly before the commission when it issued the last order, and a part of the evidence of Dr. Winters, claimant's doctor, is as follows:

"Q. What did you find, Doctor, with reference to an injury of the right leg? A. I have a history of him having been hit by extensions and pipe falling upon him, in which he sustained a dislocation right hip, a compound fracture of the right femur and also ligaments were pulled loose in the calf of the right lower leg. He says his leg draws up, swells up and gets very painful. On examination I find the flesh on the right leg pits on pressure and the pits remain. The veins of the entire leg are varicosed, and use of the leg causes swelling and tenderness, and he cannot straighten it entirely. Movements of the leg are spasmodic and he cannot straighten it entirely. Movements of the leg are spasmodic and he cannot straighten the leg fully while standing on it. Q. Now, when this right hip was thrown out of socket, did that necessarily disturb the blood vessels in the thigh there? A. Yes, that would throw a great deal of tension on down. Q. Would that cause this varicosed condition and pitting? A. Yes, sir. Q. Doctor, in view of the fact that the injury happened in July of 1926, what would you say as to its permanency? A. I would say it is permanent. Q. From the history claimant gives you and from your physical examination, what is your opinion as to the degree of disability of that right leg? A. I have it as 85 per cent. Q. 85 per cent? A. Yes, sir."

Now, under the Compensation Law in force in 1926, the measure of compensation is based on the loss of earning power in a general disability, as this is. The doctor has given evidence of 85 per cent. permanent disability to the leg; the commission has found from testimony of loss of earnings from claimant and lay witnesses that the claimant's earnings have been reduced 50 per cent. by reason of the injury. The gist of respondents' contention is that the doctor should have given evidence as to the loss of earnings by reason of this injury. This contention has no foundation, for the reason that it would in all cases, and particularly this case, be utterly impossible for any medical expert to state what the loss of earnings were by reason of the injury. It is very possible that an injured employee may be able to earn nothing by reason of his injury, or he may earn $10 per day, so necessarily the evidence as to the loss of wages would have to be given by the claimant and lay witnesses; and it certainly cannot be said

that a man with 85 per cent. permanent disability to his leg is not injured to an extent that it would reasonably reduce his earning power 50 per cent.

This is what the commission found from the evidence of the doctor, as to the loss of use of the right leg, and from evidence of the claimant and lay witnesses as to the claimant's inability to work.

The record abundantly shows that the claimant has been disabled ever since the injury, and that his earning capacity has been reduced. Instead of doing the heavy work which he was doing before the injury he had to be placed at light work, tinkering around the yard, and for some three or four months he had to be treated by the company doctor.

The evidence is definite, positive, and undisputed and clearly shows that the claimant was laid off by the respondent because of his injury, and for the same reason was later turned down and refused employment.

The record shows clearly that the claimant has been disabled continually from the time of the injury up to the time of the hearing, and with the exceptions of the time' when he worked for the Empire Oil & Refining Company he was not able to work at all, or was forced to modify his request by asking for light work.

Viewing this evidence most favorably to the respondents, it shows that the claimant was not able to command regular employment, and when he was forced to ask for light work it was tantamount to being paid small wages for same or refused entirely, and certainly proves that this claimant has suffered more than 50 per cent. loss of earning power, by reason of his injury, during the 210 weeks awarded him by the commission.

The record amply reflects that the claimant, because of unfortunate conditions at home, did everything possib'e in this condition to earn money, and when an injured employee works under these circumstances which he did, and suffers pain and agony by reason of his work, the respondents are given due credit in the judgment for the time he worked. It is not the law of this state to use this unfortunate condition against him to preclude him from obtaining his just compensation for the time he was not able to secure employment. The court used the same reasoning in the case of the Oklahoma Gas & Electric Co. et al. v. Thomas et al., 115 Okla. 67, 241 P. 820. In the body of the opinion the court said:

"The conduct of the claimant in continuing to work under adverse physical conditions cannot excuse the respondent from the duty of prosecuting such inquiry into the physical condition of the claimant as the circumstances of the case demanded. Nor can such conduct be permitted to impeach or destroy proof here relied on by claimant as meeting the requirements of the burden of proof imposed on him by the statute. Claimant's conduct in continuing to work must be attributed to optimism and general tenacity of purpose on his part, rather than any desire to mislead respondent as to the nature and extent of his injury. Such tenacity of purpose is to be commended, and cannot of itself, operate to the prejudice of claimant in a proceeding for compensation, under the Workmen's Compensation Act."

And the evidence of the claimant is competent as shown by the decision of this court in the case of Hazel Atlas Glass Co. et al. v. Pendergrass et al., 152 Okla. 271, 4 P. (2d) 96. In the 4th paragraph of the syllabus this court said:

"Where a witness testifies before the State Industrial Commission as to the nature and extent of his disability, and the same is not objected to upon the ground the witness is incompetent to testify, this court cannot say, as a matter of law, that the witness was incompetent. Where petitioners fail to raise that question before the Industrial Commission, it cannot be raised here for the first time."

There is ample evidence in the record of this case for the commission to base its award as to the reduced earning power of the claimant. It is apparent, however, that the testimony is conflicting, but this court has said in numerous cases on appeal from the Industrial Commission that so long as there is any competent evidence to support the award of the commission, the same will not be disturbed, and this court has further held, as in the case of Smith et al. v. State Industrial Commission, 133 Okla. 77, 271 P. 142, that:

"The Workmen's Compensation Act of this state * * * must be construed as a whole, and those laws enacted for the protection of labor should be liberally, rather than strictly, construed, both by the Industrial Commission and the Supreme Court, so as to give effect to the intention and purpose of the law."

And the Supreme Court of the state of Utah likewise said in the case of Leventis et al. v. Industrial Commission et a'., 35 P. (2d) 770, in the second paragraph of the syllabus:

"In reviewing finding of Industrial Board supporting award of compensation, every le-

# 136

gitimate inference must be drawn in favor of employee."

The award of the State Industrial Commission is therefore affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and PHELPS, JJ., concur.