### B. & H. PASSMORE METAL & ROOFING CO., Inc., v. NEW AMSTERDAM CASUALTY CO.

No. 2959.

Circuit Court of Appeals, Tenth Circuit.

Jan. 31, 1945.

John A. Johnson, of Oklahoma City, Okl. (Henry S. Griffing, of Oklahoma City, Okl., on the brief), for appellant.

James C. Cheek, of Oklahoma City, Okl. (Cheek, Gibson, Savage & Benefield, of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

New Amsterdam Casualty Company[1] brought this action against B. & H. Passmore Metal & Roofing Co., Inc.,[2] under

---

[1] Hereinafter referred to as the Casualty Company.

[2] Hereinafter referred to as Passmore.

section 274d of the Judicial Code, as amended, 28 U.S.C.A. § 400, seeking a determination, by declaratory judgment, of the duties, rights, and obligations of the Casualty Company under a policy of liability insurance issued by it to Passmore.

The material provisions of the policy read as follows:

"New Amsterdam Casualty Company * * * Does hereby agree with the insured, * * *

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile. * * *

"Exclusions.

"This policy does not apply: * * *

"(e) under coverage A, to bodily injury to or death of any employee of the insured while engaged in the business, other than domestic employment, of the insured, * * *; or to any obligation for which the insured may be held liable under any workmen's compensation law; * * *"

The policy covered a 1929 one-and-a-half ton Ford truck.

Passmore is a roofing company. It maintains a shop in downtown Oklahoma City, Oklahoma. The truck was used by Passmore to haul material and supplies to and from the place of work. It was driven daily before working hours from the shop to the place of work and returned daily after working hours to the shop. Passmore's employees were advised that they might ride in the truck from the shop to the place of work and back to the shop if they so desired, but they were not required so to do. The places of work varied from time to time and from day to day. Leslie C. Little was employed by Passmore. He was paid by the hour. His working day began at 8 a. m. and ended at 5 p. m. During the first seven weeks of his employment, he acted as job foreman and during that period drove his private automobile to and from the places of work. On one job at Norman, Oklahoma, 20 miles from the shop, he transported himself to and from the job in his own automobile. At other times he customarily drove his automobile

to the shop, where he left it, and rode from the shop to the place of work and back to the shop in Passmore's truck. Two other employees of Passmore also at times furnished their own transportation. But Passmore employees customarily rode in the truck from the shop to the place of work and back to the shop outside of working hours. Little and the two other employees, who at times furnished their own transportation, received no extra compensation for so doing.

Employees of Passmore were not paid for the time consumed in riding to and from the place of work. They had no work to perform at the shop after 5 p. m., the hour at which their working day on the job ended.

On September 20, 1943, Little and three other roofers rode in the truck to a job at the Baptist Orphanage, nine miles from the shop and one mile from public transportation. After 5 p. m. on that day, Little, while riding on the truck returning to the shop, fell from the truck and was instantly killed. Elsie Jewel Little, the widow of Little, brought an action in the District Court of Oklahoma County, Oklahoma, against Passmore to recover damages for the alleged wrongful death of Little. Passmore demanded that the Casualty Company defend the action on behalf of Passmore and pay any judgment which might be rendered against Passmore in such action. The Casualty Company denied any liability or obligation under the policy.

The trial court found that there was an implied contract between Passmore and Little for the transportation of Little by Passmore to and from the places of work and that Little was an employee of Passmore engaged in the business of Passmore at the time of the accident. It also concluded that Little was engaged in a hazardous business within the meaning of the Oklahoma Workmen's Compensation Law, 85 O.S.1941 § 1 et seq., which would have covered his injuries had the accident not resulted in his death. It entered a judgment declaring and determining that the Casualty Company was not under any duty to defend the action in the state court and was not obligated to pay any judgment which might be rendered in such action. Passmore has appealed.

It is true that if the accident had not resulted in Little's death he would have been entitled to benefits under the Work-

538

men's Compensation Law and the liability of Passmore would not have been within the coverage of the policy, not because Little was "engaged in the business" of Passmore at the time of the accident, but because any obligation for which Passmore might be held liable under the Workmen's Compensation Law was expressly excluded from the coverage of the policy.

At the time of the accident Little was not engaged in any work and was not performing any service for Passmore and he was not receiving any pay for his time. He was simply riding from the place of work to Passmore's shop in a conveyance gratuitously furnished by Passmore. The Casualty Company relies upon decisions of the Oklahoma Supreme Court holding that an injury to an employee sustained while he is returning from work in a conveyance furnished by his employer is an injury "arising out of and in the course of his employment." [3] But, in those decisions, the Supreme Court was construing a provision of the Oklahoma Workmen's Compensation Law and not a private contract, and it has repeatedly held that such law is a remedial statute and should receive a liberal construction in favor of the injured employee.[4]

In R. J. Allison, Inc., v. Boling, Okl.Sup., 134 P.2d 980, 982, the court held that the clause "arising out of and in the course of his employment" should be "liberally construed . . in favor of" the injured workman and "all reasonable doubt as to its meaning should be resolved in his favor."

On the contrary, an exclusion clause in a policy of insurance, under Oklahoma law, must be strictly construed against the insurer.[5]

In Illinois Bankers' Life Ass'n v. Jackson, 88 Okl. 133, 211 P. 508, the court, in construing the clause in an insurance policy "if the insured engages in military or naval service, this policy is void," held:

"'Where a life insurance policy is open to two constructions, one favorable and one unfavorable to the insured, the former will be adopted in order to make effective the primary obligation of the contract.'

"'The provisions of a life insurance policy exempting the insurer from liability under certain conditions will be construed strictly against the insurer.'"

See, also, Barnett v. Merchants' Life Ins. Co., 87 Okl. 42, 208 P. 271.

Moreover, the matters which should be considered in the construction of a contract differ from those which should be considered in the construction of a statute. In construing a contract it is the duty of the court to ascertain and give effect to the real intent of the parties. That intent is the mutual understanding and agreement of the parties. But in construing a statute no mutuality of agreement is to be sought out. Rather, the intent to be ascertained is that of the legislative body.[6]

The liability of the employer under the Workmen's Compensation Law arises from the law itself rather than from any agreement of the parties.[7]

Moreover, the exclusion clause "engaged in the business, * * * of the insured" differs materially from the clause "arising out of and in the course of his employment." The word "engaged" connotes action. In Barnett v. Merchants' Life Ins. Co., supra [87 Okl. 42, 208 P. 272], the court, in construing a clause in the policy

---

[3] McGeorge Corporation v. State Industrial Commission, 180 Okl. 346, 69 P.2d 320; Cary v. State Industrial Commission, 147 Okl. 162, 296 P. 385; R. J. Allison, Inc., v. Boling, Okl.Sup., 134 P.2d 980; Ford v. Holt, 191 Okl. 534, 131 P.2d 67.

[4] Oklahoma Gas & Electric Co. v. Hunsicker, 178 Okl. 565, 63 P.2d 21, 23; R. J. Allison, Inc., v. Boling, Okl.Sup., 134 P.2d 980, 982; Marland Oil Co. v. Sans, 175 Okl. 131, 51 P.2d 751, 756; Maryland Casualty Co. v. State Industrial Commission, 139 Okl. 302, 282 P. 293, 294; Scruggs Bros. & Bill Garage v. State Industrial Commission, 94 Okl. 187, 221 P. 470, 473; McAlester Colliery Co. v. State

Industrial Commission, 85 Okl. 66, 204 P. 630, 631; Stasmos v. State Industrial Commission, 80 Okl. 221, 195 P. 762, 763, 15 A.L.R. 576; Thompson v. State Industrial Commission, 138 Okl. 166, 280 P. 597, 598.

[5] National Life & Acc. Ins. Co. v. May, 170 Okl. 198, 39 P.2d 107, 108; Barnett v. Merchants' Life Ins. Co., 87 Okl. 42, 208 P. 271, 273.

[6] Union Pacific R. R. Co. v. United States, 10 Ct.Cl. 548, 577; United States v. Dodson, D.C.Cal., 268 F. 397, 407.

[7] Sheehan Pipe Line Const. Co. v. State Industrial Commission, 151 Okl. 272, 273, 3 P.2d 199, 201.

"shall engage in military or naval service in time of war," held that the word "engage" denotes action and that it means to take part in by performing some duty.

In Head v. New York Life Ins. Co., 10 Cir., 43 F.2d 517, 520, this court said: "'Engage,' is defined in volume 3 of Words and Phrases, Third Series, at page 258, as follows: '"Engage" means to take part in or be employed in, however the employment may arise;' and at page 259 as follows: 'To "engage" is to embark in a business; to take a part; to employ or involve one's self; to devote attention and effort.'"[8]

■ No doubt, under certain particular factual situations there would be no doubt that the employee either was or was not engaged in the business of his employer. But, in a borderline case, such as is here presented, we think the rule of strict construction of the exclusion clause has legitimate application. Clearly, the exclusion clause here involved is not less ambiguous than the clause "engages in military or naval service" or the clause "arising out of and in the course of his employment." To the former the Supreme Court of Oklahoma has applied the rule of strict construction and to the latter the rule of liberal construction. Hence, we are constrained to hold, in the light of the Oklahoma decisions, that Little at the time of the accident was not "engaged in the business" of Passmore.

With one exception, the adjudicated cases in other jurisdictions support this view.

In State Farm Mut. Automobile Ins. Co. v. Brooks, 8 Cir., 136 F.2d 807, the facts were these: The insured operated a fuel yard at Joplin, Missouri. He purchased a slab pile located about 35 miles from Joplin. He employed two boys to bring lumber from the slab pile to a saw located on the job, to assist in loading the truck with wood after it had been cut, and to assist in unloading the wood in the evening at the fuel yard. He arranged to transport them from Joplin to the slab pile and back to the fuel yard. He paid them a daily wage. While returning from the slab pile to Joplin, the truck overturned, resulting in injuries to one of the employees and the death of the other. The court, in construing an exclusion clause identical with the one here involved, held that at the time of the accident the employees were engaged in the business of the insured. It will be observed that the accident occurred during the working day and while the employees were being transported from one place of work to another place of work to perform additional duties at the latter place.[9]

On the other hand, Green v. Travelers Ins. Co., 286 N.Y. 358, 36 N.E.2d 620, Elliott v. Behner, 150 Kan. 876, 96 P.2d 852, and State Farm Mutual Auto Ins. Co. v. Skluzacek, 208 Minn. 443, 294 N.W. 413, support the conclusion we have reached.

The judgment is reversed and the cause is remanded with instructions to enter a declaratory judgment adjudging that Little was not engaged in the business of Passmore at the time of the accident and that the liability, if any, of Passmore for the wrongful death of Little is within the coverage of the policy.

BRATTON, Circuit Judge, dissents.

---

[8] See, also, Benham v. American Central Life Ins. Co., 140 Ark. 612, 217 S. W. 462; Illinois Bankers' Life Ass'n v. Jackson, 88 Okl. 133, 211 P. 508.

[9] Johnson v. Aetna Casualty & Surety Co., 5 Cir., 104 F.2d 22, 24, relied on by the Casualty Company, is distinguishable from the instant case. There, the policy excluded from the coverage "any obligation for which the insured may be held liable under any workmen's compensation law." The court held that the employee, while riding in a conveyance furnished by his employer from the place of work to his home 40 miles distant, was injured in the course of his employment, and, therefore, he was entitled to benefits under the Workmen's Compensation Law and the accident was excluded from the coverage of the policy. Here, the question is, was Little at the time of the accident engaged in the business of his employer?