**TRI-STATE CASUALTY INS. CO.**
**v. LOPER.**

No. 4524.

United States Court of Appeals
Tenth Circuit.

Feb. 13, 1953.

Rehearing Denied May 25, 1953.

Huxman, J., dissented.

C. J. Watts and Looney, Watts, Ross, Looney & Smith, Oklahoma City, Okl., were on the brief for appellants.

James E. Grigsby, Oklahoma City, Okl., and Omer Luellen, Hinton, Okl., were on the brief for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The decisive question which the appeal in this case presents for determination is

558

whether R. P. Loper, at the time he suffered personal injury, was engaged in the employment of G. E. Lanier, within the intent and meaning of a provision contained in a policy of public liability insurance excluding from the coverage bodily injury to an employee while engaged in the employment of the insured.

Lanier owned a certain truck and semi-trailer which he operated in Kansas and elsewhere as a private carrier. To comply with the laws of Kansas, he filed or caused to be filed with the Public Service Commission of that state a policy of public liability insurance. The policy was issued by Tri-State Casualty Insurance Company and it obligated the company to pay within fixed limits of amount compensation for injuries to persons resulting from the negligent operation of the truck. The policy expressly excluded from its coverage bodily injury to an employee while engaged in the employment of the insured. W. T. Willis and Loper were employed by the insured as drivers of the truck. They left Brownsville, Texas, with the truck loaded with fruit and were bound for Fargo, North Dakota. Each was supposed to drive half of the time. The truck was equipped with a sleeper cab to the rear of the driver's cab. Near Concordia, Kansas, Loper became ill and requested Willis to drive for him. Willis complied with the request, and Loper retired to the sleeper cab. When the truck reached a point in North Dakota, it overturned and Loper sustained personal injury. Loper had not driven since becoming ill and requesting Willis to drive for him, and he was in the sleeper cab at the time of the accident. Loper instituted suit against Lanier and the insurance company to recover damages for his injury. The action was dismissed as to the insurance company, and judgment was rendered against Lanier. Thereafter, Loper caused to be issued a writ of garnishment against the insurance company on the ground that it was indebted to Lanier. By answer, the insurance company admitted the issuance of the policy but pleaded that Loper was an employee of Lanier; that the policy specifically excluded from its coverage injury of an employee; that the injury sustained by Loper was not

covered by the policy; and that therefore the company was not indebted to Lanier. At the conclusion of the hearing on the issue joined in that manner the court concluded among other things that Loper was not engaged in the employment of Lanier at the time of the accident; and that the insurance company was indebted to Loper for the amount of the judgment previously rendered against Lanier. Judgment was entered against the company and it appealed.

An insurance policy is a contract, and the rules established for the construction of written instruments apply to contracts of insurance equally with other contracts. A policy of insurance which is free from ambiguity must be construed according to its terms taken in their plain, ordinary, and accepted sense. But if the terms of a policy are ambiguous, obscure, or open to different constructions, the construction most favorable to the insured or other beneficiary must prevail. Samson v. United States Fidelity & Guaranty Co., 131 Kan. 59, 289 P. 427; Utilities Insurance Co. v. Potter, 188 Okl. 145, 105 P.2d 259, 154 A.L.R. 512. If the terms of a policy are ambiguous or open to doubt in respect to coverage, the question should be resolved in favor of the insured or other beneficiary. Mendel v. Fort Scott Hydraulic Cement Co., 147 Kan. 719, 78 P.2d 868. And that rule applies to an ambiguous or doubtful provision in a policy which attempts to exclude from the coverage liability in certain circumstances. Spence v. New York Life Insurance Co., 154 Kan. 379, 118 P.2d 514, 137 A.L.R. 753; Great Northern Life Insurance Co. v. Cole, Okl., 248 P.2d 608. But these well recognized general rules of construction do not lend support to the judgment against the insurance company for the reason that the crucial provision in the policy on which the case turns is not ambiguous, obscure, or open to different constructions. By clear and incisive language entirely free from doubt or obscurity, it provides that bodily injury of an employee while engaged in the employment of the insured is excluded from the coverage.

It is an established principle of law that where one is employed to do spe-

cific work without any agreement or understanding that as an incident to the employment, the employer will furnish transportation to and from the place at which the service is to be performed, but as a mere matter of accommodation or gratuity the employer does transport the employee to and from the place of work, the employee is not engaged in the employment of the employer while being transported, within the intent and meaning of an exclusion or exempting provision of the kind here in question. B. & H. Passmore Metal & Roofing Co. v. New Amsterdam Casualty Co., 10 Cir., 147 F.2d 536; Elliott v. Behner, 150 Kan. 876, 96 P.2d 852; Green v. Travelers Insurance Co., 286 N.Y. 358, 36 N.E.2d 620; State Farm Mutual Auto Co. v. Skluzacek, 208 Minn. 443, 294 N.W. 413. But Loper was not employed by the hour or to do piece work. He was employed by the week. It was his duty to drive the truck half of the time and he received the same compensation whether actually driving or riding along in order to be at his post of duty and available for service when his turn came to drive. Throughout the entire trip he was either serving in a driving capacity or in a standby capacity in furtherance of the business of the insured. Two drivers being necessary to operate the truck in furtherance of the business of the employer, and the constant moving of the truck being in furtherance of the business, it was essential to the business of the insured that Loper remain on the truck and accompany it while the other driver was at the wheel. The business of the insured could not be carried on in the desired manner unless Loper did remain on the truck throughout the trip, whether driving or not. It was implicit in the employment that he remain on the truck while the other driver was driving in order to be ready and available to drive when his shift came. It was equally implicit in the employment that he occupy the sleeper cab at least part of the time while not driving in order to be refreshed and able physically to drive safely during his shift. At the moment of the accident, he was on the truck and occupying the sleeper cab in fulfillment of his employment and in furtherance of the business of the insured. He was an employee engaged in the employment of the insured at the time of the accident and resulting injury within the intent and meaning of the exclusion provision in the policy to which reference has been made. Getlin v. Maryland Casualty Co., 9 Cir., 196 F.2d 249.

■■ The Motor Carrier Act of 1935, as amended, 49 U.S.C.A. § 301 et seq., empowers the Interstate Commerce Commission to make reasonable rules and regulations governing carriers by motor vehicle with respect to safety of operation; and reasonable rules and regulations promulgated by the commission within the scope of its permitted authority under the Act have the force and effect of law. Interstate Motor Lines v. Great Western Railway Co., 10 Cir., 161 F.2d 968. Under that grant of power it is the duty of the commission to regulate motor carriers by promulgating reasonable requirements to promote safety of operation and to that end prescribe qualifications, maximum hours of service of employees, and standards of equipment. In the exercise of that power and in the discharge of that duty, the commission has promulgated regulations. Section 191.1(c), section 191.1(g), section 191.3 (b), and section 193.4, 49 Code Federal Regulations 204, 205, 212, provide:

"A driver is on duty from the time he begins to work or is required to be in readiness to work until the time he is relieved from work and all responsibility for performing work. Time spent by a driver resting or sleeping in a berth as defined in paragraph (g) of this section shall not be included in computing time on duty."

"The term 'berth' means a berth or bunk on the motor vehicle which is properly equipped for the purpose of sleeping, including springs and a mattress, or an inner-spring mattress, pillow, adequate bed clothing, adequate ventilation, and ready means of entering and leaving the berth."

"Except under conditions set forth in Section 191.6(a) and (b), no carrier

subject to the regulations in this part shall permit or require a driver in his employ to drive or operate for more than 10 hours in the aggregate in any period of 24 consecutive hours, unless such driver be off duty for 8 consecutive hours during or immediately following the 10 hours aggregate work and within said period of 24 consecutive hours; · Provided, however, That two periods of resting or sleeping in a berth, as defined in Section 191.1(g), may be cumulated to give the aforesaid total of 8 hours off duty: * * *."

"No motor vehicle shall be driven by any driver while his ability or alertness is so impaired through fatigue, illness, or any other cause as to make it unsafe for him to drive or to continue to drive a motor vehicle, nor shall he be required or knowingly be permitted to drive while in such condition, except in case of grave emergency where the hazard to passengers would be increased by observance of the foregoing provisions."

· The underlying purpose of these regulations is to promote safety of operation. In order to accomplish the desired purpose, the commission fixed the maximum hours a driver may be permitted to operate a motor vehicle and forbade the operation of such a vehicle by a driver while his ability and alertness are impaired through fatigue, illness, or other cause to such an extent as to render it unsafe for him to continue driving. And by section 191.1(c) it defined the beginning and the end of the period a driver is on duty, and provided that time spent by a driver in resting or sleeping in a berth as defined in paragraph (g) of the regulation shall not be included in computing time on duty. In that manner, the commission fixed the status of a driver as to being on duty or otherwise. But the regulation neither undertakes to fix nor fixes the status of a driver while occupying the sleeper berth in respect to being engaged in the employment of his employer or otherwise.

The judgment is reversed and the cause is remanded.

HUXMAN, Circuit Judge (dissenting).

The critical language of the exclusion clause excludes from coverage "bodily injury to or sickness, disease of any employee of the insured while engaged in the employment, * * * of the insured * * *." I cannot agree that this language is free from ambiguity or not open to different constructions. If under the facts of this case there is but one construction that can be given to this language, then to me it must be that the employee at the time was not engaged in his employment for his master. To me the phrase "engaged in employment of the insured" means actively working at some phase of the job for which he was hired. Under the theory of the majority if an operator employed three drivers, each working eight-hour shifts, and in order to prevent the necessity of establishing relay stations so that a driver off duty and sleeping would be available at the point where he took over, he provided two berths for occupancy by the off duty employees, they would be engaged in their employment for twenty-four hours, while like drivers sleeping in relay stations would not be so engaged.

The term "engaged in the employment" is not synonymous with "arising out of the employment". It is a much narrower term and must be so construed under these exclusion clauses. There are some analogous cases in which it has been held that an employee under similar facts was not engaged in his employment.

The facts in this case are indistinguishable from those in Ayres v. Harleysville Mut. Casualty Co., 172 Va. 383, 2 S.E.2d 303. In fact in some respects they make a stronger case for coverage than was made by the facts in that case. That case, like this, involved a truck in charge of a driver and an assistant or stand-by driver, whose duty it was to relieve the driver at stated intervals and assist in loading and unloading the truck. In the original case Aronovitch v. Ayres, reported in 169 Va. 308, 193 S.E. 524, 527, where judgment was obtained against the employer, it is stated that "Each in shifts drove the truck, and each helped to load and unload it." At the time of the accident, Scruggs, the principal driver, and

Ayres, his assistant and relief driver, had made two trips with the truck. On the third trip while operating in this way an accident occurred while Scruggs was driving and while Ayres was sitting at his side awaiting his turn to drive. The question in the case, like here, was whether Ayres was excluded from coverage by an exclusion clause, identical in principle, because at the time of the accident he was engaged in his employment in the business of the insured. The lower court found that he was and found for the insurance company. On appeal the judgment was reversed. The Virginia court held that there was ambiguity in the language of the exclusion clause. The court points out that the words "while" and "engaged" as used by Webster's New International Dictionary have a restricted and a liberal meaning. Thus it is pointed out that "while" is defined as a space of time, especially when short and marked by some action or happening and that the word "engaged" means occupied or employed. The court then points out that under a liberal interpretation of these words Ayres would be engaged in the operation of the truck but that under the restricted and strict construction required in such cases he would not be so engaged.

In Moss v. St. Paul-Mercury Indemnity Co., La.App., 35 So.2d 867, the Louisiana court held that a student driver of a truck who asked to be temporarily relieved of driving the truck during his time on duty so he might study was not engaged in the course of his employment, although riding in the truck at the time of the accident.

The facts in Getlin v. Maryland Cas. Co., 9 Cir., 196 F.2d 249, are clearly distinguishable from the facts in this case. Obviously a soliciting agent whose business it is to solicit orders for his employer is engaged in his business while traveling or going from house to house, and so likewise when he has finished his solicitation in one place and is going to another for the purpose of continuing his solicitations, he is as much engaged in his business of soliciting orders as he is in going from one house to another house or from one block to another block in the same city.

The construction that one off duty and sleeping in a berth is not engaged in his employment also finds support in the regulations promulgated by the Interstate Commerce Commission under the power of the Motor Carriers Act of 1935, cited in the majority opinion. Thus those regulations provide that "Time spent by a driver resting or sleeping in a berth as defined in Paragraph (g) of this Section shall not be included in computing time on duty." Also "That two periods of resting or sleeping in a berth, as defined in Section 191.1 (g), may be cumulated to give the aforesaid total of eight hours off duty." Evidently the Interstate Commerce Commission construed these provisions to mean that time spent in a berth resting or sleeping was time off duty. If it is time off duty, it is no part of the employment, and during such time one cannot be engaged in his employment.

This employee was off duty because he was sick. He could not work. He could not drive the truck. He was as much off duty as though he had left the truck and spent this time in a cabin and, when recovered, had taken a car to catch the truck and go back on duty. The fact that he was being paid for this is in my view immaterial to the question before us. There are numerous instances where time off duty is paid for but that does not make time off duty time while engaged at work or in the employment.

For these reasons I would affirm the judgment.

## On Motion for Rehearing

Rehearing denied.

MURRAH, Circuit Judge (specially concurring on denial of petition for rehearing).

Because of the earnest contention that this case is controlled by B. & H. Passmore Metal & Roofing Co. v. New Amsterdam Casualty Co., 10 Cir., 147 F.2d 536, 538, in which I did not participate; and in view of the divided opinion in that case and here, it seems appropriate to briefly state my views of the two cases.

562

In the first place, I am certain that there is a clear and valid distinction between the two cases, and that both of them are correctly decided. In the Passmore case, Chief Judge Phillips pointed out that "At the time of the accident Little was not engaged in any work and was not performing any service for Passmore"; and what is more important, "he was not receiving any pay for his time. He was simply riding from the place of work to Passmore's shop in a conveyance gratuitously furnished by Passmore." In holding that Passmore was not "engaged in the business" of his employer, Chief Judge Phillips drew a clear distinction between the facts in that case and the cases where the "accident occurred during the working day and while the employees were being transported from one place of work to another place of work to perform additional duties at the latter place."

Paraphrasing Chief Judge Phillips, the accident occurred to the employee in our case during the working week while he was being transported from one place to another to perform additional duties. Judge Bratton draws the distinction clearly and succinctly when he says, "Throughout the entire trip he [Loper] was either serving in a driving capacity or in a standby capacity in furtherance of the business of the insured." In his dissent, Judge Huxman did not allude to the Passmore case, and we may therefore assume that he does not think it is controlling.