No. 34,468

MABEL ELLIOTT, *Appellee and Cross-appellant,* v. ED BEHNER, EMPLOYERS CASUALTY COMPANY OF DALLAS, TEXAS, Garnishee, *Appellant.*

(96 P. 2d 852)

Opinion filed December 9, 1939.

*James A. Allen, B. M. Dunham*, both of Chanute, *Thomas F. Doran, Clayton E. Kline, M. F. Cosgrove, Balfour S. Jeffrey* and *Robert E. Russell*, all of Topeka, for the appellant.

*O. L. O'Brien* and *Walter L. McVey*, both of Independence, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a garnishment proceeding wherein the plaintiff in an action for damages sought to collect the judgment she had obtained in her damage action from a corporation she claimed was indebted to the defendant in that action. Judgment was for the plaintiff. The garnishee appeals.

At the outset the garnishee demanded a jury trial. This was denied. The facts were found by the trial court in substance as follows: At the time the cause of action for damages arose the Employers Casualty Company had issued to Montgomery county a policy covering a Ford truck and certain other motor vehicles. This policy was introduced in evidence and is a part of the record before us. It is a construction of this policy which is involved in this proceeding. In the policy the company agreed to insure, wherever used in connection with agreements A and B in it, not only the named

insured, but any other person or organization while using the automobile, provided the actual use of it was pleasure and business or commercial, as defined in the policy, and the use was with the permission of the named insured. At the time the cause of action arose out of which this proceeding grows, this policy was in full force and effect.

On October 28, 1935, Montgomery county was using this truck in transporting men from the place of work where they had been employed to Independence. Ed Behner was driving the truck, with the consent of the county. It had been used for this purpose for several years and Behner had been driving it. Albert Elliott was riding the truck on this day. He did not pay anything or receive anything for transportation. The employees could ride in the truck if they wished, but it was not a requirement of the county that Elliott or the employees ride in this particular truck, and they had the privilege of providing their own conveyance to their work. The employees were paid on the basis of eight hours a day, and their time started at eight o'clock on the job and they quit at five on the job, and then could return to their homes any way they saw fit. Ed Behner, who was driving the truck, received twenty cents a day extra and transportation for driving.

On the day in question, about five-thirty in the evening, Ed Behner was driving the truck, and Elliott, with other employees, was riding it back to Independence. A collision occurred which resulted in the death of Elliott. Written notice of the collision was given the insurance company, as required by the terms of the policy, and the company investigated the facts pertaining to the accident. Thereafter, on August 13, 1936, Mabel Elliott filed an action for damages against Behner. On August 15, 1936, Montgomery county gave written notice to the garnishee company of the filing of the action and sent it a copy of the petition. They stated in the notice that the county and Behner expected to defend the action. On September 22, 1936, the company denied liability under the terms of the policy and advised the county that any assistance in the defense of the action must not be construed as an admission of liability on the part of the insurance company. Thereafter the garnishee refused to defend Ed Behner and he conducted the defense through his own attorney. The lawyers for the garnishee were notified by counsel for the plaintiff of the various steps taken in the action, and one of them was present part of the time during the trial in district

court, but made no appearance, and one of them was present in the supreme court when the appeal in the damage action was presented.

The damage action resulted in a judgment for $5,000 for plaintiff against Behner. This judgment was affirmed on appeal. Montgomery county was not a party to this action.

An execution against Behner was issued and returned showing no property found. Subsequently Behner was adjudged a bankrupt and his estate was a non-asset estate. No part of the judgment against Behner has been paid.

The plaintiff in the damage action caused a garnishment summons to be issued against the insurance company. That company answered that it was not indebted to Behner. The plaintiff elected to take issue with the garnishee on that answer. The trial arose on the above pleadings.

At the time Behner was using the truck and caused the death of Elliott he was using it for purposes within the permitted uses under the policy contract, namely, that of transporting employees of Montgomery county to and from their place of employment.

The court held as a conclusion of law that at the time of the service of the garnishment summons upon the garnishee it was indebted to Behner in the amount of $5,000, the amount of the judgment, with interest and costs, and that by reason thereof Mabel Elliott was entitled to recover from the garnishee $5,000, with interest and costs. The garnishee was ordered to pay that amount to the clerk of the court to be applied on the judgment of Mabel Elliott against Behner. A motion for a new trial was filed and overruled. Judgment was rendered in accordance with the findings of fact and conclusions of law. The garnishee appeals.

On his argument in this court the garnishee presents six questions. They are as follows:

1. Did the garnishee waive any of its rights under the policy, and is it estopped from asserting its non-liability under the policy in the garnishment proceedings?

2. Is it entitled to judgment because the liability of or the death of Elliott was excluded under the provision that the company will not be liable for loss or damage: . . . because of bodily injury to any employee of the assured, except household servants other than chauffeurs, while engaged in any business or occupation of the assured?

3. If this court should hold that Elliott was not an employee of the assured, does the garnishee have a further defense under the terms of the policy which arises out of the fact that Elliott was a passenger in the truck of the assured on the occasion of the accident?

4. Must the liability of the garnishee be determined in accordance with all of the provisions of the policy?

5. Did the trial court err when it denied the request of garnishee for a jury trial?

6. Did the trial court disregard the express terms and conditions of the policy and thereby nullify the contract between the parties, in violation of section 10 of article 1 of the constitution of the United States?

As to the first question argued by the garnishee, that is, that it did not waive any of its defenses under the policy, it appears that the trial court did not place its decision on that point. While it is argued vigorously by the garnishee, it is not pressed by the plaintiff here, and since the conclusion we have reached upon the cause does not depend on the answer to that question, it will not be considered further.

The next question argued by the garnishee is that it is not liable under a certain clause of the policy. The policy provides, in part, as follows:

"Unless otherwise provided by agreement in writing added hereto, this company will not be liable for loss or damage: . . . because of bodily injury to any employee of the assured (except household servants other than chauffeurs) while engaged in any business or occupation of the assured . . ."

Garnishee argues that Elliott was an employee engaged in the business or occupation of the assured, that is, the county, when he was killed, and on this account it is not liable under the policy on account of his death. The answer to be given depends upon whether under the facts and circumstances of this case Elliott at the time he was killed was an "employee" of the assured and "engaged in the business or occupation of the assured." It will be noted that in order for this exemption to apply Elliott must have been an "employee" of the assured, but he must also have been killed while he was engaged in the "business or occupation of the assured."

At the outset of this decision it is wise to note that in cases involving the construction of an insurance policy, where the terms of the policy are obscure or open to two constructions, the construction most favorable to the insured must prevail. (See *Bank v. Colton*, 102 Kan. 365, 170 Pac. 992, and *School District v. North River Ins. Co.*, post, p. 894, 96 P. 2d 610.) In cases where a policy of insurance is so drawn as to require an interpretation, a construction most favorable to the insured will be adopted, for the reason that the company prepares the contract of insurance, thereby using its own language. (See *Brown v. Accident Insurance Co.*, 114 Kan. 337,

219 Pac. 505.) In this case the clauses under consideration are not clear and certainly require interpretation.

It is clear that everyone who is engaged in the business or occupation of the assured would be its employee, but not every employee is engaged in the business or occupation of the assured all the time. After Elliott arrived home and went about affairs there he would still be spoken of as an employee of the county, but if he should have been injured by some accident while in his home it would hardly be maintained that he was injured while employed in the "business or occupation" of the county. In this case Elliott had finished eight hours work for the county. The trip home in the truck was no part of his employment. He paid nothing for it and could ride in the truck or not as he saw fit. He was performing no service for the county when thus riding. The county engineer testified to this effect and it was not disputed by the garnishee.

In this connection the garnishee points out certain language used by the trial court in finding of fact No. 11, after referring to the fact that the transportation of employees was within the permitted uses of the truck. That language is as follows:

"The court further finds that at the time the said Ed Behner was using the said truck and caused the injury and death to the said Albert Elliott that he was using the same for purposes within the permitted uses under the policy contract, namely, that of transporting employees of Montgomery county, Kansas, to and from their place of employment, which transportation was pursuant to consent and custom of Montgomery county, Kansas, and had been for some time prior to the accident; such transportation being an implied condition of Albert Elliott's, the deceased's, contract of employment with Montgomery county, Kansas."

The garnishee argues that the above finding brings Elliott under the terms of the exemption which is relied on here. If this language should be given that construction as a finding of fact, then such a construction is inconsistent with the finding of fact No. 2, which was as follows:

"That on the 28th day of October, 1935, the named assured, Montgomery county, Kansas, was using the said truck in transporting men from the place of work where the men had been employed, to Independence, Kansas, and the said defendant, Ed Behner, was driving said truck, with the consent of the named assured, and the said driver had been driving said truck and the county had been using said truck for this purpose for several years. Albert Elliott did not pay anything or receive anything for his transportation. The employees could ride in the truck if they wished, but it was not a requirement of Montgomery county, Kansas, that Mr. Elliott or the employees ride in this

particular truck, and they had the privilege of providing their own conveyance to the work. The employees were paid on the basis of eight hours a day, and their time started at eight o'clock on the job and they quit at 5 o'clock on the job, and then returned to their homes any way they chose. The defendant, Ed Behner, who was driving the truck, with the consent of the county, lived in Cherryvale, Kansas, and received 20 cents a day extra and transportation for driving the truck."

That part of finding No. 11 upon which the garnishee depends is really a conclusion of law which is not supported by the other findings and the undisputed evidence.

In the second place, the transportation could be an "implied condition of the contract of employment," and still Elliott would not be engaged in the "business or occupation" of the county when he was killed.

There is language something like that in this contract in G. S. 1935, 44-501, the workmen's compensation act. That section reads, in part, as follows:

"If in any employment to which this act applies, personal injury by accident arising out of and in the course of employment is caused to a workman . . ."

This court has held that an injury must "arise out of" and happen "in the course of" the employment in order for the workmen's compensation act to apply. (See *Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 34 P. 2d 542, and cases cited.) There this court said:

"Did the accident which caused plaintiff's injury arise 'out of' his employment? Even when other conditions exist authorizing the award of compensation, it is essential that the accident which causes injury to the employee arise 'out of' and 'in the course of' his employment. Both conditions must exist. (*Bevard v. Coal Co.*, 101 Kan. 207, 208, 165 Pac. 657; *Haas v. Light & Power Co.*, 109 Kan. 197, 203, 198 Pac. 174.) The terms are not to be confused. They mean separate things. 'In the course of' employment simply means while the employment was in progress. (*Cox v. Refining Co.*, 108 Kan. 320, 195 Pac. 863.) Those words point to the time, place and circumstances under which the accident took place. (*State Highway Commission v. Saylor* [Ky.], 68 S. W. 2d 26.) Applying these authorities to the accident which caused claimant's injury in this case, there is no difficulty in saying that the accident arose 'in the course of' his employment. But that is not enough. It is essential also that it arose 'out of' the employment . . ." (p. 200.)

It is not enough that the person injured be an employee of the assured for this clause to exempt the garnishee from liability, the injury must also have happened while the injured man was engaged in the "business or occupation" of the assured. Elliott was not so engaged when the accident occurred.

We shall next consider the argument of the garnishee that it has a further defense under additional separate exclusion clauses of the policy. The first one of these we shall consider is clause (b). That clause provides as follows:

"Unless otherwise provided by agreement in writing added hereto, this company will not be liable for loss or damage: . . . (b) While the automobile described is used as a public or livery conveyance for carrying passengers for compensation; or while rented under contract or leased; or operated in any race or speed contest; or while being used in any illicit or prohibited trade or transportation; or while being used for demonstrating or testing."

The garnishee points out that Behner, the driver of the truck, was given 20 cents a day for driving this truck; that the county had the truck there for Elliott to ride if he cared to ride, and argues from these facts that Elliott was a passenger, was being carried for compensation, hence the clause quoted above excludes the garnishee from liability. It will be noted that three conditions must be met here; that is, the truck must have been used as a "public or livery" conveyance for carrying "passengers," and this carrying must have been for "compensation." It is hard to see how the first condition is met here. An agreement was made by the parties as to some of the facts. It was agreed "the county transported the men from the county garage in Independence to and from their work, and had done so for a number of years," and, also, it is further agreed that on the occasion of said accident Ed Behner was driving said truck by reason of his employment with Montgomery county and he never invited nor permitted Elliott to ride on the truck. He had no right to select or determine who should ride nor to exclude any member of the crew.

These admissions must be considered together with the undisputed testimony and the findings of the trial court. When this is done it does not appear that the use of this truck was for the public. That word, when used in connection with the carrying of passengers, implies the holding out of the vehicle to the general public for carrying passengers for hire. Here the carrying of passengers was limited to the members of the bridge crew. Furthermore, the word "livery," when used in such a connection, has about the same meaning. The term "public conveyance" was defined in 6 Berry on Automobiles, sec. 6.617, as follows:

"It is a public conveyance because indiscriminately it conveys the public. It is not private, because its use is not limited to certain persons and particular occasions, or governed by special terms."

The authorities cited and relied on by the garnishee on this point are all cases where the vehicle was held out to carry the public, or the words of the exclusion clause are broader than those of the clause we are considering. Here, too, the rule that ambiguous clauses in policies must be given the interpretation most favorable to the insured is in point.

The next argument of the garnishee is that it has a further defense on account of the following clause:

"Unless otherwise provided by agreement in writing added hereto, this company not liable for loss or damage. . . ."

Under Agreement A for injury to any passenger while in the automobile described in the declarations as "commercial" if used for passenger carrying purposes, regardless of whether a consideration is charged for the carrying of such passengers. The garnishee argues that this must be construed in connection with section 5 of the Declarations. That section provides as follows:

"The automobile described is and will be used for the following purposes only: 'Business and Pleasure.' (a) The term 'Pleasure and Business,' when so used, is defined as personal, pleasure and family use, including business calls. (b) The term 'commercial,' when so used, is defined as the transportation or delivery and the loading and unloading of goods or merchandise in direct connection with the assured's occupation as expressed in warranty 1."

There are several words and terms that must be construed in dealing with this argument. In the first place, to what does "Agreement A" in the above clause refer? Agreement A reads as follows:

### BODILY INJURY LIABILITY

"Agreement A—To insure the assured against loss by reason of the liability imposed upon him by law for damages because of bodily injury, including death at any time resulting therefrom (herein called 'bodily injury') sustained by any person or persons, accidentally caused and arising out of the ownership, maintenance or use of the automobile described in the declarations for the purpose therein stated. The company's limit of liability, regardless of the number of assured, as respects each automobile described, for bodily injury to or death of one person, shall be as first set forth in item 1, paragraph C, of the declarations and, subject to that limit for each person, its total liability on account of any one accident resulting in bodily injury to or death of more than one person, shall be as second set forth in said item."

It will be seen that the above is the insuring clause for situations such as we have here. In the next place, to what does the word "declarations" refer, as used in both the above clauses? There is a section of the policy headed "Declarations." The clause preceding it is the first clause of the policy, and reads as follows:

"Does hereby agree with the assured, named in the Declarations made a part hereof (herein called 'named assured') as respects any or all of the following coverages for the automobile herein described, for which specific premium charge or charges are made in the respective columns provided therefor in said Declarations, and subject to the terms, provisions, limits, conditions and exclusions hereof, as set forth herein;"

Under the heading "Declarations" appears a space for the name of the insured with the name "County of Montgomery, State of Kansas" written in with a typewriter. Then the date when the term of the policy begins and ends. Then follows a clause providing as follows:

"This insurance is against only such and so many of the agreements named in the schedule below as are indicated by a specific premium in writing set opposite thereto. The limit of this company's liability against each of such agreements shall be as stated in a special and/or general conditions of this policy, not exceeding, however, the limits stated in said schedule."

Following this appears three columns—one headed "schedule of agreements," the next "limit of liability," and the next "premiums."

Under the first column "bodily injury," as defined in Agreement A, page 2, is printed. Under the second, $10,000 is written first, with a typewriter, and $20,000 second. In the third column $188.37 is written in with a typewriter. Then follow some clauses with which we are not particularly interested. Then a clause as follows:

"4. The description of the automobile and the facts respecting its purchase are as follows:"

And following that is written in with a typewriter the words "See schedule attached."

A schedule is attached on which appears a description of several automobiles and trucks, including the truck with which we are interested.

After the paragraph wherein appears the words "see schedule attached" there is a paragraph reading as follows:

"The automobile described is and will be used for the following purposes only."

Written in a blank space provided appear the words "business and pleasure."

Following that are the two clauses—

"(a) The term 'pleasure and business,' when so used, is defined as personal, pleasure and family use, including business calls.

"(b) The term 'commercial' when so used, is defined as the transportation or delivery and the loading and unloading of goods or merchandise in direct connection with the assured's occupation as expressed in warranty 1."

Warranty 1 is a statement that the assured is Montgomery county.

We will now return to an examination of the exemption clause under which garnishee seeks to avoid liability. It will be remembered that this clause only applies if the injured party suffers an injury while in the automobile described in the declarations as "commercial" if used for passenger carrying purposes. We have seen that the truck in this case is described as "business and pleasure." The policy was prepared by the assurer. The words above quoted were undoubtedly written in there by the company when the policy was being sold to the county. There is no evidence here nor is the claim made that wrong information was given the company. The fact remains that the exemption clause refers to "commercial" and the declarations state that this car was to be used for pleasure and business. Both terms are given a definite meaning in the policy and it would not do for us to hold that one term meant the same as the other. The different clauses of the policy have been set out in detail so that it may be plainly seen that the clause in question is not clear and the interpretation of it requires an examination of the entire policy.

The next question argued by the garnishee is that its liability must be determined in accordance with all the provisions of the policy and that no cause of action could arise against the company until there had been a compliance with all the conditions. The clause of the policy, pursuant to which this argument is made, reads as follows:

"(3) *Determination of Company's Liability.*—No cause of action against the company shall be had under agreements A or B of this policy until the amount of loss or expense shall have been determined, either by final judgment against the assured after actual trial in an action defended by the company or by a written agreement of the assured, the claimant, and the company, nor in either event unless suit is instituted within the time herein limited."

The argument of garnishee is that there can be no cause of action against it until the amount of loss or expense shall have been determined, either by final judgment against the county after actual trial in an action defended by the county, or by written agreement between the assured, the claimant, and the appellant.

The clause relied on in this connection must be considered in connection with section 15 of the policy. That section reads as follows:

"Wherever used in connection with agreements A and B, the unqualified word 'assured' includes not only the named assured, but any other person or

organization while using such automobile, including also any other person or organization legally responsible for the use thereof, provided the disclosed and actual use of such automobile is 'pleasure and business' or 'commercial,' each as defined herein, and further provided that such use is with the permission of the named assured . . ."

No argument is made here but what Behner was using the truck with the permission of the county and met with the provisions of the policy in other respects as found by the trial court. In connection with agreements A and B of the policy the garnishee agreed to defend in the name and in behalf of the assured any suit seeking damages. Under the provisions of section 15 of the policy quoted above and the facts and circumstances in this case the obligation was to defend Behner as well as to defend the county. The garnishee had notice of the pendency of the action for damages, was advised of the claim, and knew of each step taken in the damage action.

This action is somewhat analogous to *Robertson v. Labette County Comm'rs*, 122 Kan. 486, 252 Pac. 196. There Labette county had taken out a workmen's compensation policy on its employees. While building a road a workman was injured and the county and the insurance company denied liability under the workmen's compensation act and the policy. This court excused the county because at that time the county could not elect to come under the act. The insurance company was held liable under some provisions of the policy, which provided for a liability direct from the employee to the company. There, as here, the insurance company denied liability because there was no liability on the county. This court said:

"It is argued on behalf of the insurance company that if the county was not obligated to pay plaintiff compensation on account of his injuries, then the insurance company was not; that the obligation of the insurance company was to indemnify the county against loss by reason of its liability to its employees, and since the county had no such liability, the insurance company had none. This construction of the policy is inaccurate. The policy does contain provisions to indemnify the county, defend its suits, pay its losses, etc., and since the county has no liability to plaintiff because of his injury, the insurance company is not liable under those provisions of the policy. But these are not the only provisions of the policy. The policy contains provisions creating a direct liability on the part of the insurance company to the injured employee, and by various provisions that is made specific and definite in the policy." (p. 489.)

In this case the plaintiff could not have obtained a judgment against the county for the injury to her husband. Counties are only

liable as provided by statute, and it is not argued that this was such a case. In this argument the garnishee is taking the position that it may sell the policy and take the premiums and never be liable, because the only way a county could be liable for the death or injury of anyone would be for them to recover on account of a defective highway. There are, however, provisions in the policy that have been quoted and discussed heretofore, making the garnishee liable for an injury caused by an automobile covered by the policy when it is being driven by some one with the consent of the county. We hold that under all the facts and circumstances this is such a case.

The garnishee next argues that the trial court erred in denying it a trial by jury. It argues that as between it and plaintiff this was an action for money in which there were disputed questions of fact. G. S. 1935, 60-2903 provides:

"Issues of fact arising in actions for the recovery of money or of specific real or personal property shall be tried by a jury, unless a jury trial is waived or a reference be ordered as hereinafter provided. All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by a jury or referred as provided in this code."

Reference is made to section 5 of the Bill of Rights of the state constitution and section 1 of the 14th amendment to the constitution of the United States.

Without discussing the question of whether a garnishment proceeding is one where a trial by jury may be demanded as a matter of right, we will examine the issues of fact presented and argued by garnishee. First, it argues that it was a question of fact for a jury to determine whether there had been a final judgment against the assured after actual trial in an action defended by the company. The determination of this fact depended on the construction of the contract in view of the facts in the written stipulation. No testimony was offered by either party that would bear on that question.

The garnishee next argues that it was a question of fact whether Elliott was an employee of the assured. As has been demonstrated, that question was answered by the trial court from the admitted facts and undisputed testimony. We have examined the other questions of fact pointed out by the garnishee and have concluded that they are all determined upon an agreed statement of facts, the undisputed testimony and the policy itself. The garnishee was not prejudiced in presenting its case by the denial of a trial by jury. Under such circumstances we will not examine the interesting ques-

tion of whether in a garnishment proceedings the garnishee is entitled to a jury as a matter of right.

The next argument of the garnishee is that the lower court disregarded the plain terms of the contract and made a new contract for the parties in violation of section 10 of article 1 of the constitution of the United States.

The trial court did not make a new contract. It merely construed the one between the parties, albeit as announced early in this opinion, where the language was ambiguous or the interpretation doubtful the construction most favorable to the assured was adopted. There is no constitutional inhibition against that.

The plaintiff filed a motion wherein she requested a modification of certain findings. The concluson we have reached as to the main appeal makes it unnecessary that we consider this cross-appeal of plaintiff.

The judgment of the trial court is affirmed.

THIELE, J. (dissenting): I cannot agree with the conclusion reached in the court's opinion. While it is true that one endorsement on the policy indicated the truck might be used for business or pleasure, it seems to me to be beyond dispute that a county may not have a truck for pleasure purposes. In any event, it is clear the truck was being used in the county's business and for commercial purposes at the time the accident occurred as a result of which Elliott lost his life. As I see it, that use determined application of the terms of the policy. One portion of that policy dealt with "exclusions," and specifically stated that unless otherwise provided by agreement in writing the company would not be liable for loss or damage, in the following:

"(g) Under agreement A for injury to any passenger, while in the automobile described in the declaration as 'commercial' if used for passenger carrying purposes, regardless of whether a consideration is charged for the carrying of such passengers."

There is nothing ambiguous about that language, either in itself or considered with the context of the policy. Certainly Elliott was a passenger on the truck and whether he paid any consideration for riding was immaterial. Just as certainly Elliott was not riding for pleasure but was availing himself of a means of transportation furnished for his use in going to and returning from his work. Under the plain terms of the exclusion clause the company was not liable.

WEDELL, J., joins in this dissent.