## ST. PAUL MERCURY INDEMNITY COMPANY AND ANOTHER v. MAURICE A. KNOPH.

87 N. W. (2d) 636.

January 31, 1958—No. 37,181.

Schermer & Gensler, for appellant.

Meagher, Geer, Markham & Anderson, David W. Nord, and O. C. Adamson II, for respondents.

DELL, CHIEF JUSTICE.

This is an appeal from a declaratory judgment entered in favor of the plaintiffs and from an order denying defendant's motion for a new trial. The action arises out of an automobile accident which oc-

curred between the defendant and one Demar on March 17, 1955. As a result of the accident various lawsuits were commenced against the defendant, who looks to plaintiffs for defense of said actions under a combined policy of liability and collision insurance issued to him by them. He also claims indemnity as provided by the terms of said policy, if necessary, together with payment for the damage to his automobile over and above the sum of $150. The plaintiffs contend, however, that defendant was not covered under the policy at the time of the accident because of a clause in the policy which provided that none of the insuring agreements should apply while the automobile was used as a public or livery conveyance. By this action plaintiffs seek to determine their obligations and liabilities, if any, to the defendant.

The material facts are these: Defendant was a partner in a taxicab business known as the B. & R. Cab Company. On the evening of March 17 he received a call for a cab at the company office from Mr. and Mrs. O'Rourke. The request was relayed to one of the regular cab drivers who had his cab with him at home. This driver started out but never reached the O'Rourke home because of a flat tire. Defendant was immediately notified. None of the other cabs was available and since defendant was about to leave for home anyway he decided to transport the O'Rourkes himself. In doing so he used his own personal car, a 1954 Mercury, which was insured by the plaintiffs. When he arrived at the O'Rourke home he pulled into the driveway and the O'Rourkes, believing this to be the cab they had requested, came outside, entered the automobile, and proceeded toward their destination. During the trip defendant explained why he, instead of a regular cab driver, was transporting them in his automobile instead of in a regular cab. He also claims that he told them that there would be no charge for the ride although the O'Rourkes claim that there was never any such conversation and that they expected and intended to pay a fare. The accident occurred before the car reached its destination and no fare was ever paid.

Plaintiffs claim upon these facts that the defendant merely substituted his personal car for one of the company taxicabs, that he intended to charge a fare, that he consequently was using his automobile as a

public or livery conveyance, that, therefore, he was not covered under the policy at the time of the accident, and that they owe no obligations to the defendant or anyone else on account of the accident. Defendant, on the other hand, contends that he was merely rendering a service to an "Irishman" by taking him to a St. Patrick's day party, that he was on his way home anyway, that he did not intend to charge, and that, therefore, he did not violate the terms of his policy. He further argues that to use his car as a taxicab, when it was not so licensed or equipped, or to act as a cab driver when he had no chauffeur's license would have violated state law[1]—something he never intended to do.

It appears that the four cabs of the B. & R. Cab Company all had distinctive markings which differed from defendant's car. Two had meters and two did not. Defendant had never acted as a cab driver before nor had he known the O'Rourkes previously. From the facts it appears that it was somewhat out of his way to pick up and transport the O'Rourkes before going home.

The sole question presented below was whether defendant was using his car as a public or livery conveyance at the time of the accident. The lower court found that the O'Rourkes "were being carried for a consideration," concluded that defendant's automobile, at the time of the accident, was being used as a public or livery conveyance, and ordered judgment in favor of the plaintiffs.

■ There is little case law on the exclusionary clause in liability insurance policies relating to the use of a private car as a public or livery conveyance. This is no doubt due to the fact that the present wording is of comparatively recent origin. The wording of the older policies dealt principally with the carriage of passengers for compensation[2] and the tendency was toward a narrow construction favoring the insurance companies.[3] However, when the companies commenced to apply this clause to "sharing-the-expense" agreements in an attempt

---

[1]M. S. A. 168.39.

[2]For illustrative examples, see Annotation, 30 A. L. R. (2d) 274, notes 2, 3, and 4.

[3]Cases are collected in Annotations, 95 A. L. R. 150, 118 A. L. R. 393, and 147 A. L. R. 632.

to escape liability, they encountered difficulty,[4] especially when these and other car pooling arrangements increased during the war years.

The companies responded with the adoption of clauses similar to the one in the instant case.[5] Nevertheless, the courts have not only continued to construe the new clauses in favor of insureds in cases of expense sharing[6] but have extended it to other cases where drivers have charged fares of their passengers.[7]

From these cases the emerging rule of law seems to be that the primary factor in determining whether a vehicle is used as a public or livery conveyance depends upon whether the transportation is generally available to the public rather than whether any money has been or will be paid.[8] Thus, where the persons transported were limited to members of a club,[9] fellow employees,[10] or fellow show members,[11] the courts have uniformly imposed liability upon the insurance companies even though in the latter two cases this was a habitual practice.

McDaniel v. Glens Falls Ind. Co. 333 Ill. App. 596, 78 N. E. (2d) 111, illustrates the trend. There plaintiff, through a travel agency,

---

[4]Wood v. Merchants Ins. Co. 291 Mich. 573, 289 N. W. 259; Pimper v. National American Fire Ins. Co. 139 Neb. 109, 296 N. W. 465.

[5]Examples of these clauses are collected in Annotation, 30 A. L. R. (2d) 275, note 5.

[6]Allstate Ins. Co. v. Roberson (8 Cir.) 217 F. (2d) 10; Allor v. Dubay, 317 Mich. 281, 26 N. W. (2d) 772; Ganzhorn v. Manufacturers' Cas. Ins. Co. 179 Misc. 548, 39 N. Y. S. (2d) 522, affirmed, 265 App. Div. 851, 38 N. Y. S. (2d) 366.

[7]McDaniel v. Glens Falls Ind. Co. 333 Ill. App. 596, 78 N. E. (2d) 111; Stanley v. American Motorists Ins. Co. 195 Md. 180, 73 A. (2d) 1, 30 A. L. R. (2d) 268.

[8]The term "public conveyance" means a vehicle used indiscriminately in conveying the public, and "not limited to certain persons and particular occasions, or governed by special terms." The words "public conveyance" imply "the holding out of the vehicle to the general public for carrying passengers for hire." The words "livery conveyance" have about the same meaning. Elliott v. Behner, 150 Kan. 876, 883, 96 P. (2d) 852, 857.

[9]Stanley v. American Motorists Ins. Co. 195 Md. 180, 73 A. (2d) 1, 30 A. L. R. (2d) 268.

[10]Allstate Ins. Co. v. Roberson (8 Cir.) 217 F. (2d) 10.

[11]Commercial Credit Corp. v. Monroe, 38 Tenn. App. 596, 277 S. W. (2d) 423.

solicited riders to accompany her from California to Texas. Each rider paid a fee for the transportation. Before selecting these passengers she had refused to accept two sailors because they had been drinking. En route there was an accident and the insurance company set up the exclusionary clause as a defense. Relying on the method of selection as an illustration that the transportation was not generally available, the court held that this was not a public or livery conveyance.

In Stanley v. American Motorists Ins. Co. 195 Md. 180, 73 A. (2d) 1, 30 A. L. R. (2d) 268, the insured's truck was used to transport people to a club picnic. It was driven by another with his consent and a total of $18 was collected in fares. Apparently the riders were solicited. On the way there was an accident and in a subsequent lawsuit the insurance company attempted to set up a clause identical with that in the instant case as a defense. In holding that coverage was not barred, the Maryland Court of Appeals stated (195 Md. 186, 73 A. [2d] 3, 30 A. L. R. [2d] 272):

"* * * If insured's truck had been held out to the public, by advertisement or otherwise, for use as a vehicle for carrying passengers for hire, on picnic parties or otherwise, such use would have been an excluded use even if the accident happened on the first instance of such use. But words defining a particular excluded use, *e. g.,* use 'as a public or livery conveyance', unlike others, *e. g.,* use for 'the carrying of persons for a consideration', may be inapplicable to a particular single isolated transaction though applicable to a course of such transactions. * * * We do not * * * attempt to say how many picnic parties would have amounted to a holding out to the public of the truck as a public or livery conveyance. It is sufficient to say that the one isolated instance of use by Johnson for compensation was not such a holding out."

The reasoning in the Stanley case applies equally well here. True, there are cases involving insured automobiles where no liability was imposed upon the insurers because it was held that the vehicles were used as public or livery conveyances.[12] However, those cases involved

---

[12]Warren v. Royal Exch. Assur. Co. (Mo. App.) 205 S. W. (2d) 744; Jackson v. Old Colony Ins. Co. 31 Tenn. App. 424, 216 S. W. (2d) 354.

long and continuous series of violations so that the automobiles ceased to be private vehicles and actually became taxicabs.

■ Plaintiffs rely upon these cases by arguing that defendant merely substituted his car for one of the taxicabs which were generally held out to the public indiscriminately. They conclude that, since the taxicab company was required to carry the O'Rourkes unless there was some valid reason for not so doing, defendant was likewise bound to do so. When the dispatched cab became disabled, defendant was not bound to substitute his automobile for it. Whether or not he intended to charge a fare is immaterial. What is important is that in one isolated instance he transported a couple who were in a special predicament. We cannot say that he thereby converted his car into a public or livery conveyance. Therefore we conclude that on the facts as presented, defendant's coverage under the policy was not suspended during the time he was transporting the O'Rourkes.

Unfortunately, however, the facts in this case are not as clear as the law. When this action was tried below, the parties purportedly stipulated to certain facts and also stipulated as to what testimony defendant would give if called as a witness, but in this court they disagreed about what was actually stipulated and what those facts established. The stipulation itself is not entirely clear in all respects and leaves much to be desired. Moreover, further proceedings in this court upon a motion for a dismissal or stay of proceedings, made subsequent to the submission of this case to us for an opinion, raise other doubts regarding certain facts which may prove to be material. In view of the unsatisfactory nature of the record, the motion of plaintiffs is in all respects denied and, in the interests of justice, a new trial is granted so that all facts which are relevant in the light of this opinion may be established.

Reversed and new trial granted.