**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 2, 2015**

# In the Court of Appeals of Georgia

A15A0170. ZURICH AMERICAN INS. CO. v. OMNI HEALTH
      SOLUTIONS, LLC.

MILLER, Judge.

Omni Health Solutions, LLC ("Omni") filed an insurance coverage claim with its insurer Zurich American Insurance Company ("Zurich") for hail damage to Omni's commercial property. When a dispute arose over the amount of the covered loss under Omni's policy (hereinafter the "Policy"), Omni invoked the Policy's appraisal provision which provided for the appointment of two appraisers and an umpire. The original umpire resigned, however, after the discussions on the loss had begun, so the parties filed a joint petition in Superior Court for appointment of a new umpire. The Superior Court granted the parties' joint petition, and subsequently ruled that the appraisal awards made by the original umpire were not binding because there was a

question regarding the original umpire's impartiality. Zurich appeals, contending, inter alia, that the Superior Court erred in ruling that the original umpire's appraisal awards were non-binding. For the reasons that follow, we affirm in part and reverse in part.

"Construction and interpretation of a contract are matters of law for the court." (Citation omitted.) *Sewell v. Hull/Storey Dev.*, 241 Ga. App. 365, 366 (1) (526 SE2d 878) (1999).

The record shows that the Policy provided $2.7 million in commercial property coverage for Omni's building in Macon, Georgia (the "Insured Property"). The Insured Property consisted of a 17,200 sq. ft. building containing several doctors' offices. On February 14, 2011, while the Policy was in effect, the roof of the Insured Property was extensively damaged by hail, resulting in damage to the building's contents and equipment, as well as subsequent water and mold damage to the building's ceilings, walls and floors. The damage to the building also resulted in business interruption losses for the doctors and their offices. As a result of those losses, Omni filed an insurance claim with Zurich.

Zurich and Omni disputed the amount of the covered loss to the Insured Property. In order to resolve the dispute, an appraisal of the damage to the Insured

Property was undertaken pursuant to the terms of the Policy, which pertinently provides:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding.

The parties each named an appraiser and the two named appraisers selected the original umpire to oversee the appraisal process. Thereafter, on October 8, 2012, the two appraisers and the original umpire agreed to an award of more than $800,000 for the structural damage to the Insured Property (the "Structural Damage Award"). On December 14, 2012, Zurich's appraiser and the original umpire also agreed to an award of $322,445.61 for Omni's business interruption claim (hereinafter the "Business Interruption Award").

When the original umpire was initially appointed, he was an independent adjuster. At some point during the appraisal process, the original umpire joined a firm

that performed work for Zurich. On December 20, 2012, at Omni's request, the original umpire stepped down from the appraisal process.

Since the appraisers were unable to agree on the selection of a new umpire, the parties filed a joint petition for appointment of a new umpire by the Superior Court. Following a hearing, the Superior Court appointed a new umpire to oversee the appraisal process. The Superior Court also ruled that there was a question regarding the impartiality of the original umpire, and consequently ruled that the Structural Damage Award and the Business Interruption Award were not binding. This appeal ensued.

In four related enumerations of error, Zurich contends that the Superior Court erred in ruling that the awards were not binding. We agree in part.

> An appraisement award is the result of a contractual method of ascertaining the amount of loss,[1] and it is binding on the parties as to the amount of loss unless the award is set aside. There exists a presumption in favor of the regularity and fairness of appraisement awards, and it is difficult to set them aside. While an award may be attacked for any reason that would void a contract, . . . where there is no evidence of fraud, oppression, irregularity, or unfairness, other than on

---

[1] An appraisal process can only resolve the disputed amount of a covered loss, not broader issues of liability. *McGowan v. Progressive Preferred Ins. Co.*, 281 Ga. 169, 171-172 (637 SE2d 27) (2006).

the disputed issue of value, and no other circumstances tending to raise the issue, a verdict in the amount of the award is demanded.

(Footnote omitted.) *Bell v. Liberty Mut. Fire Ins. Co.*, 319 Ga. App. 302, 303 (734 SE2d 894) (2012).

1. The Structural Damage Award

"[E]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy[.]" (Punctuation and footnote omitted.) *Cox v. Southern Guaranty Ins. Co.*, 254 Ga. App. 776, 777 (1) (563 SE2d 882) (2002).

[U]nambiguous terms of an insurance policy require no construction, and the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured.

*Continental Cas. Co. v. H. S. I. Financial Svcs., Inc.*, 266 Ga. 260, 262 (466 SE2d 4) (1996). As set forth above, the plain language of the Policy's appraisal provision states:

[t]he appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding.

5

The record clearly shows that, in addition to the original umpire, both parties' chosen appraisers expressly agreed to the Structural Damage Award in writing. Based on the plain language of the Policy, the Structural Damage Award is binding on the parties, notwithstanding any alleged bias of the original umpire. Accordingly, the Superior Court erred in finding that the Structural Damage Award was not binding.

2. The Business Interruption Award

Unless it is set aside, the Business Interruption Award is also binding, because it was agreed to by both the original umpire and Zurich's appraiser. See *Bell*, supra, 319 Ga. App. at 303. The original umpire's partiality, however, is a ground for setting aside the award. See *Blum v. Blum*, 242 Ga. 718, 719 (251 SE2d 246) (1978) (arbitrator's partiality as to the one party is ground for setting aside award). Moreover, the Superior Court had discretion to determine whether or not to set aside the Business Interruption Award based on the original umpire's partiality, and this Court will uphold the Superior Court's ruling absent an abuse of that discretion. See e. g. *Torres v. Piedmont Builders, Inc.*, 300 Ga. App. 872, 873 (3) (686 SE2d 464) (2009) (absent abuse of discretion, this Court will uphold ruling on disqualification of arbitrator based on partiality).

6

Here, the record shows that the Business Interruption Award was based on an estimate prepared by Zurich's appraiser, and, unlike the Structural Award, only Zurich's appraiser and the original umpire agreed to the Business Interruption Award. The record also shows that Omni could only recover business interruption damages for a maximum of twelve consecutive months, and Zurich determined the 12-month time-period for calculation of Omni's business interruption damages.[2] Moreover, the Business Interruption Award was issued after the original umpire began working for a company that performed work for Zurich.

The Superior Court found that the original umpire's possible impartiality was sufficient to set aside the Business Interruption Award. Since the Business Interruption Award was based on Zurich's estimate, was issued after the umpire joined a company that performed work for Zurich and was not agreed to by Omni's appraiser, we cannot say that the Superior Court abused its discretion in setting aside the Business Interruption Award. See *Blum*, supra, 242 Ga. at 719 (arbitrator's partiality is grounds for setting aside award); *Bell*, supra, 319 Ga. App. at 303 (appraisal award may be set aside for irregularity or unfairness). Accordingly, we

---

[2] Omni's estimated monthly damages for the chosen 12-month period varied greatly from a high of nearly $42,000 to a low of just over $7,000.

7

affirm the Superior Court's ruling that the Business Interruption Award was not binding.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Branch, J., concur.*