**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 2, 2018**

# In the Court of Appeals of Georgia

A17A1808. HAULERS INS. CO. v. DAVENPORT

MILLER, Presiding Judge.

Appellee Mell Davenport was injured while parking his car when the driver in the adjacent space opened his car door in Davenport's path and the two collided. Davenport sued the other driver and served his own uninsured motorist carrier, Haulers Insurance Company ("Haulers"), under OCGA § 33-7-11 (d). Haulers answered in its own name and moved for summary judgment on the ground that its policy excluded coverage because Davenport had been operating his vehicle as a public or livery conveyance at the time of the accident. The trial court denied the motion for summary judgment and granted a certificate of immediate review, and this interlocutory appeal followed. After a thorough review of the record, we conclude that the evidence shows that Davenport was not operating his vehicle as a public or

livery conveyance, and, therefore, Haulers was not entitled to summary judgment. Accordingly, we affirm.

"We review a grant or denial of summary judgment de novo, constru[ing] the evidence in the light most favorable to the nonmovant." (Citation omitted.) *Corrugated Replacements, Inc. v. Johnson*, 340 Ga. App. 364, 365 (797 SE2d 238) (2017). Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9–11–56 (c).

So viewed, the record shows that on August 10, 2011, Maggie Billings was walking to town when Davenport saw her and offered her a ride. Billings lived in the same neighborhood as Davenport, and she would occasionally ask Davenport to drive her into town, which he would agree to do "if [he] fe[lt] like it." Davenport did not have a meter in his car and did not drive Billings every time she asked. When he did drive her into town, Billings would pay him approximately $7 for the three-mile ride. On the day of the accident, Billings did not ask Davenport for a ride; instead, Davenport offered to drive her. Although Billings expected to pay him, there is no evidence in the record that she ever paid him for this ride. Nor is there any evidence in the record that Davenport offered paid rides to the general public.

On the day of the accident, as Davenport pulled into a parking space at the post office, the driver in the adjacent parking space opened his car door into Davenport's path. At the sound of impact with the other car, Davenport jerked his head around to see what had happened and injured his neck doing so. Davenport was insured through Haulers, and his policy included uninsured motorist coverage. This policy, however, excluded coverage for damage and injuries resulting when the insured's car "is being used as a public or livery conveyance."

Davenport sued the driver of the other car and served a copy of the complaint on Haulers as his uninsured motorist carrier. Haulers moved for summary judgment on the ground that the above exclusion applied. The trial court denied Haulers' motion for summary judgment, finding that there was the "slightest doubt as to the facts," and that there was a genuine issue of fact as to whether Davenport was operating his vehicle for hire at the time of the accident.

In two related enumerations of error, Haulers argues that the trial court erred in denying summary judgment because it applied the wrong standard in ruling on the motion and overlooked Davenport's failure to defend the motion with admissible evidence. We disagree.

1. Before considering the merits of the coverage issue, we first address Haulers' claim that the trial court applied the wrong standard and failed to hold Davenport to his burden at the summary judgment stage.

Pretermitting whether the trial court applied the wrong standard, we review the record de novo. *Zurich American Ins. Co. v. Omni Health Solutions, LLC.*, 332 Ga. App. 723 (774 SE2d 782) (2015). Applying this standard of review, we conclude that this argument provides no basis for reversal.

Moreover, both parties rely solely on Billings's deposition, and this is not contradictory evidence. Because the question of whether the public or livery conveyance policy exclusion applies is a legal determination, the record before us is sufficient. We therefore turn to the merits of the parties' arguments.

2. An insurance policy is a contract. *State Farm Fire & Cas. Co. v. Bauman*, 313 Ga. App. 771, 773 (723 SE2d 1) (2012). "Construction and interpretation of a contract are matters of law for the court;" therefore, the interpretation of the exclusion at issue here is a question of law that we may decide. (Citation omitted.) *Zurich American Ins. Co.*, supra, 332 Ga. App. at 723. "Where the insurer seeks to invoke an exclusion contained in its policy, it has the burden of proving the facts come

4

within the exclusion." (Citations omitted.) *Interstate Life & Accident Ins. Co. v. Wilmont*, 123 Ga. App. 337 (1) (180 SE2d 913) (1971).

This Court must construe an insurance contract using ordinary rules of contract construction. *State Farm Fire & Cas. Co.*, supra, 313 Ga. App. at 773.

> [T]he parties to an insurance policy are bound by its plain and unambiguous terms. Thus, when faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous. . . . If a policy exclusion is unambiguous . . . it must be given effect. . . .

(Citations omitted.) *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 111-112 (722 SE2d 923) (2012). As in all other contracts, words used in an insurance policy "bear their usual and common significance," and are "construed in their ordinary meaning." (Citation omitted.) *Lawyers Title Ins. Corp. v. Griffin*, 302 Ga. App. 726, 729-730 (2) (a) (691 SE2d 633) (2010).

Here, the policy does not define the terms "public or livery conveyance," and thus, we consider the usual and common meaning of those terms. Id. See also *Taylor Morrison Svcs., Inc. v. HDI–Gerling America Ins. Co.*, 293 Ga. 456, 459-460 (1) (746 SE2d 587) (2013). "Public" is defined as "of, relating to, or affecting all the people," or "accessible to or shared by all members of the community." See Merriam-

5

webster.com/dictionary/public. "Livery" is defined as "[a] business that rents vehicles." Black's Law Dictionary (9th Ed. 2009). "Conveyance" is defined as "a means of transport." See Merriam-webster.com/dictionary/conveyance.

Our courts have had little opportunity to consider exclusion clauses precluding coverage for public or livery conveyances. However, consistent with the above definitions, in a 1983 case, the Supreme Court of Georgia stated in dicta that the phrase "public livery conveyance" is interpreted as a taxicab. *Anderson v. Southeastern Fidelity Ins. Co.*, 251 Ga. 556, 557 (307 SE2d 499) (1983); see also *Ga. Cas. & Surety Co. v. Turner*, 87 Ga. App. 618, 618 & 621 (74 SE2d 665) (1953) (concluding that merely agreeing to pay for gas expenses did not convert the loan of the use of a car into a public or livery conveyance where there had been no advertisement that the vehicle was offered as such).

Other state courts have considered similar exclusions and defined a public or livery conveyance as a vehicle held out to the general public for hire and which is used indiscriminately in that manner. See, e.g. *Elliott v. Behner*, 150 Kan. 876, 883-884 (96 P2d 852) (1939) ("Th[e] word [public] when used in connection with the carrying of passengers implies the holding out of the vehicle to the general public, for

6

carrying passengers for hire. . . . Furthermore, the word "livery" when used in such a connection has about the same meaning.").

In *Smith v. Stonewall Cas. Co.*, 212 Va. 765, 766 (188 SE2d 82) (1972), the Virginia Supreme Court found a similar insurance exclusion did not apply to a driver who was transporting co-workers to the same location for work because "a vehicle is a public or livery conveyance if it is held out to the general public for the carrying of passengers for hire and is used indiscriminately to carry the public." See also *St. Paul Mercury Indem. Co. v. Knoph*, 251 Minn. 366, 369 (1) & n. 8 (87 NW2d 636) (1958) ("the primary factor in determining whether a vehicle is used as a public or livery conveyance depends upon whether the transportation is generally available to the public rather than whether any money has been or will be paid.")

In *Morris v. Buttney*, 232 Wis2d 462, 472 ¶ 17(606 NW2d 626) (1999), the Wisconsin Supreme Court held that, in order for the exclusion to apply, "the insured vehicle must be held out to the general public for carrying people or property and must be used as such at the time of the accident." See also *U. S. Fidelity and Guar. Co. v. American Interinsurance Exchange*, 718 SW2d 955, 958 (Ky. Ct. App. 1986) (transportation services provided to select elderly individuals through community

service agency on days of agency's choosing and to locations of agency's choosing were not public or livery conveyances).

More recently, the Ohio Court of Appeals reconsidered these definitions. See *Niemeyer v. W. Reserve Mutual Cas. Co.*, No. 12-09-03, 2010 WL 1531371, * 6 (Ohio Ct. App. 2010). In that case, the court concluded that a bus chartered for a baseball team was a livery conveyance because it was a business that regularly rented vehicles to the public. The court noted that, although it was chartered by the team and thus not held out for public use at the time, it was generally available for public rental at other times. See also *Allstate Ins. Co. v. The Normandie Club*, 221 CalApp2d 103, 106-107 (Cal. Dist. Ct. App. 1963) (coverage excluded for bus that transported patrons of a public club because the group transported was selected indiscriminately from the whole community).

We are persuaded by the reasoning in these cases, as well as the dicta from our Supreme Court. As these cases demonstrate, the ordinary meaning of the policy language is unambiguous. To fall within the exclusion, the insured must present his services indiscriminately to the general public for hire. *Morris*, supra, 232 Wis2d at 472 ¶ 17; *Smith*, supra, 212 Va. at 766; *St. Paul Mercury Indem. Co.*, supra, 251 Minn. at 369 (1) & n. 8; *Elliott*, supra, 150 Kan. at 857.

Applying this unambiguous language to the facts of the instant case, we conclude that the record contains no evidence that Davenport's conduct was such that his vehicle met the definition of public or livery conveyance. *Zurich American Ins. Co.*, supra, 332 Ga. App. at 723. There is no evidence that Davenport held himself out indiscriminately to the public, or operated a business for hire. See *Morris*, supra, 232 Wis.2d at 472 ¶ 17; *Smith*, supra, 212 Va. at 766; *St. Paul Mercury Indem. Co.*, supra, 251 Minn. at 369 (1) & n. 8. The evidence merely shows that he occasionally offered a specific friend and neighbor a ride for a fee. Indeed, on the day of the accident, Davenport gratuitously offered Billings a ride. We therefore conclude that, absent evidence that the Davenport used the vehicle indiscriminately to transport members of the general public for hire, or regularly rented out his vehicle for hire, Davenport was not operating his vehicle either as a livery or a public conveyance at the time of the accident as required to trigger the policy exclusion. Thus, Haulers has not met its burden to establish that the policy exclusion applied. Accordingly, the trial court properly denied Haulers' motion for summary judgment.

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*